### GELCO BUILDERS & BURJAY CONSTRUCTION CORP.
v.
### The UNITED STATES.
Nos. 374–63, 169–66.

United States Court of Claims.

Dec. 16, 1966.

---

Lewis Stockman, New York City, for plaintiff; Robert R. Hume, New York City, attorney of record.

Sheldon J. Wolfe, Washington, D. C., with whom was Acting Asst. Atty. Gen. J. William Doolittle, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

## PER CURIAM:

This case was referred to Trial Commissioner Saul Richard Gamer, with directions to make recommendation for conclusions of law on plaintiff's motion and defendant's cross-motion for summary judgment. The commissioner has done so in an opinion and report filed on March 28, 1966. Plaintiff filed a request for review of the commissioner's opinion and the case was submitted to the court on the briefs of the parties and oral argument of counsel. Since the court is in agreement with the opinion and recommendation of the commissioner, with modifications, it hereby adopts the same, as modified, as the basis for its judgment in this case, as hereinafter set forth. Therefore, plaintiff's motion

for summary judgment is denied, defendant's cross-motion for summary judgment is granted and plaintiff's petition is dismissed as to that portion of plaintiff's claim set forth in the original petition filed on December 27, 1963, in case No. 374–63.*

Commissioner Gamer's opinion,** as modified by the court, is as follows:

Plaintiff is a joint venture that contracted with the Public Building Service, General Services Administration, to install, at a contract price of almost $2,200,000, central air conditioning in the United States Post Office at 8th Avenue and 33rd Street, New York City (and the Morgan Annex on 9th Avenue). Its complaint is that it was required, contrary to the alleged proper interpretation of the specification provisions, to install insulation covering on certain supply ducts. It seeks compensation of over $385,000 for such allegedly extra work.

The dispute arose during contract performance, plaintiff demanding a change order, and the contracting officer finally formally directing plaintiff to cover the ducts in question without extra compensation. Plaintiff, under the contract Disputes clause, appealed to the GSA Board of Review, which, after holding a hearing, denied the appeal as well as plaintiff's subsequent motion for reconsideration (the Board by that time becoming known as the GSA Board of Contract Appeals). This suit followed.

After a determination by this court that plaintiff's action was, pursuant to United States v. Carlo Bianchi & Co., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963), and Morrison-Knudsen Co. v. United States, 345 F.2d 833, 170 Ct. Cl. 757 (1965), to be determined on the basis of the Board record, plaintiff filed a motion for summary judgment and defendant has cross-moved.

---

* The court has granted plaintiff's motion to consolidate Nos. 374–63 and 169–66, and the consolidated petition is not dismissed as to the cause of action stated in the petition originally filed in No. 169–66.

** The opinion and recommended conclusion of law are submitted pursuant to order of the court under Rule 54(b). The facts are stated in the opinion.

The controversy revolves about an addendum to the specifications which defendant issued prior to the opening of bids. The original Invitation for Bids, which included the project specifications as part of the bidding documents, was issued January 22, 1960, and set February 19, 1960, as the bid opening date. There is no dispute about these specifications requiring the covering of the supply ducts in question. The specifications were divided into 28 sections, and section 26, entitled NON-CONDUCTIVE COVERING, contained in its opening paragraph 26–1, headed SCOPE OF WORK, the following sentence (the second sentence in the paragraph) which specifically required the supply ducts to be covered:

> All air conditioning air handling units, fresh air intakes, *all air conditioning new and existing supply ducts,* and all return ducts located in non-conditioned spaces, *shall be covered.* (Emphasis supplied.)

Furthermore, GSA had, since August 1957, a STANDARD SPECIFICATION FOR NONCONDUCTING COVERING, and the next following paragraph 26–2, headed STANDARD SPECIFICATION, provided that "All covering shall be furnished in accordance with" such specification "except as otherwise specified herein." Another paragraph in the same section, 26–11, entitled COVERING FOR AIR CONDITIONING DUCTS, provided "See Paragraphs[s] 82 * * *" of such Standard Specification, and paragraph 82, set forth under a general heading COVERING FOR AIR CONDITIONING

DUCTS, ETC., also explicitly provided that: "The following shall be covered: *All supply ducts* * * *" (Emphasis supplied.) Thus, there could reasonably be no question whatsoever that, by specific mention in the project specifications themselves, as well as by reference to the Standard Specification, which also contained such an explicit requirement, all the supply ducts had to be covered.

The trouble is that on February 11, 1960, GSA issued an ADDENDUM No. 1 which informed bidders that the specifications "are hereby modified" in several respects. One of the modifications (No. 15) was to change the above-quoted second sentence of paragraph 26–1 to read as follows:

> All air conditioning air handling units, fresh air intakes, *and all air conditioning new and existing shall be covered* and all return air ducts located in non-conditioned spaces shall be covered. (Emphasis supplied.)

Thus, that part of the original sentence reading "all air conditioning new and existing supply ducts" was changed to read "and all air conditioning new and existing shall be covered". It is upon the omission of the words "supply ducts" in this part of the modified sentence that plaintiff's entire case is based. Plaintiff argued to the contracting officer that the supply ducts were obviously originally required to be covered because the sentence in its unmodified form specifically said so, but that it was equally manifest that the modification, by deleting these crucial words, removed the requirement. Plaintiff's case was that simple.[1]

---

1. Its position was set forth in its letter of March 17, 1961, in which plaintiff stated that the addendum "was issued to remove the covering on the supply ducts from the Contract", that "All covering for supply ducts were specifically deleted by Addendum #1 and are not part of our Contract", and that "Our bid price for this job was based upon the Plans, Specifications and Addendums and did not include the covering of the supply ducts." The same contentions were repeated in plaintiff's letter of March 31, 1961, as well as in plaintiff's letter of appeal to the GSA Administrator, dated May 12,

1961, wherein it stated: "It is our contention that in Addendum #1 par. 15 * * * the covering of the supply ducts was clearly eliminated from the scope of the work * * *."

Actually, the insulation work was performed by the G & M Insulation Corp., a sub-subcontractor working for the Raymar Contracting Corp., plaintiff's mechanical subcontractor. It was G & M that made the original complaint by its letter of November 21, 1960 to Raymar, which stated that both the Standard and the original project specifications required "the insulation of all air conditioning

However, it must be evident that the omission of the words "supply ducts" is not the end of the problem, but in fact only the beginning. For the task of seeing what the new sentence says and means without such words cannot be escaped. And as to this, one is compelled to conclude that, by any reasoned usage of words, the clause "all air conditioning new and existing shall be covered" leaves one in a quandary. If "air conditioning" is used as a noun, as the clause seemingly did (instead of as an adjective, as it was originally used), then obviously all "air conditioning" can hardly be covered. The clause becomes quite meaningless. But if "all air conditioning" is attempted to be made meaningful by using it in the sense of the entire air conditioning system— a most inartful way indeed of expressing such a thought—then, in requiring that the entire system installed would have to be · covered, it would again be most peculiar. Installing nonconductive covering on the heavy air conditioning machinery itself would hardly be a rational requirement. Besides, if it had such an all-inclusive meaning, then what could possibly be the purpose of the rest of paragraph 26–1, and indeed of the balance of the very second sentence itself, in enumerating in detail the specific ducts and piping both to be covered and not covered?[2] The modified sentence itself wound up with the provision that "all

return ducts located in non-conditioned spaces shall be covered." This meant that all return ducts located in conditioned spaces should not be covered. But how then could this square with the previous all-inclusive requirement in the same sentence that the entire air conditioning system be covered? And similarly, what then could possibly be the purpose of the further delineation contained in paragraph 82 of the Standard Specification of what should be covered, as well as not covered?[3]

But worst of all so far as plaintiff's case is concerned, if the clause is somehow construed to require covering the entire air conditioning system, then that would necessarily include the "supply ducts" too, so that plaintiff could take no comfort from the omission of those words anyway. The fact of the matter is that grammatically and practically the modified sentence was a puzzle. Something was clearly wrong. The only logical conclusion was that "air conditioning" was obviously intended to be used, not as a noun, but, as it was used in the original sentence, and throughout the balance of paragraph 26–1, as an adjective, and that the word or words which it modified or described were inadvertently omitted. However, proceeding on this reasonable supposition, then what word or words could be considered as omitted? As shown, it could hardly be the entire "system", for, in

supply air ducts" but that item 15 of the addendum "deleted the second sentence, including all duct insulation, and replaced it with a modified scope of work."

2. The entire paragraph, as amended, reads as follows:
"26–1. SCOPE OF WORK. The work covered by this specification includes the furnishing of all labor, materials, equipment and installation of covering required for air conditioning ductwork, ventilation ductwork, steam and return piping, chilled water piping, all refrigerant piping, cold water piping, cooling coil drain piping, air conditioning equipment and casings, plumbing piping, and weatherproofing for covering located outdoors. All air conditioning air handling units, fresh air intakes, and all air conditioning new and existing shall be covered and all return air

ducts located in non-conditioned spaces shall be covered. Water chillers and chilled water pumps shall also be covered and for pumps shall have removable top covering and for chillers removable covering at each end. Covering for existing equipment and piping where removed for purposes of alteration and new connections or damaged covering shall be replaced and shall be similar to the new covering."

3. That paragraph reads as follows:
"82. The following shall be covered: All supply ducts, casings, etc., from fresh air inlets to room outlets; return ducts in spaces not supplied with conditioned air. Other return ducts including ducts in hung ceiling spaces between conditioned rooms need not be covered."

addition to the reasons already set forth, the paragraph was in a section of the specifications headed "Non-Conductive Covering" which delineated those *parts* of the system, principally the duct work and the piping, which would have to be covered. Could it then be, as it originally was, the "supply ducts"? Or the "return ducts"? Or some piping equipment?

If ever there was a situation calling for the application of the rule requiring a bidder to make inquiry (Black, Raber-Kief & Associates v. United States, 357 F. 2d 355, 174 Ct.Cl. 302 (1966), and cases therein cited), this was certainly it.[4] That a contractor would confidently proceed, simply on the basis of the omission of the words "supply ducts" from the sentence upon which plaintiff relies, to delete work from its bid in the alleged amount of over $385,000, without any regard to what meaning was then to be given to the sentence, or how the sentence would then rationally relate to the balance of the specifications, just cannot be understood.

The contracting officer ruled that paragraph 82 of the Standard Specification, referenced by paragraph 26–11 into the same section 26 that contained the sentence upon which plaintiff relies, specifically required the covering of "all supply ducts" and that if it had been defendant's intent to delete such covering "we would have also deleted appropriate sections and wordage in" such paragraph 82.

Plaintiff says that it reasonably construed the amended sentence deleting the words "supply ducts" to require covering only the supply ducts in nonconditioned areas and to effect the deletion of the former coverage requirement only insofar as the supply ducts in air conditioned areas are concerned. It argues that the amended clause reading "all air conditioning new and existing shall be covered" reasonably meant "that covering which is necessary for an operational air conditioning system", and, for such a system to be operational, the supply ducts in nonconditioned areas would have to be covered because the cool air passing through such ducts located in such areas would otherwise become warm. It says, however, that it is not the normal trade practice to insulate supply ducts in conditioned areas because the cool air of the conditioned area itself would serve to maintain the coolness of the air in the duct. "This", says plaintiff, "is what the Addendum clearly meant." (Plaintiff's motion for summary judgement, p. 19.) Plaintiff's argument is, therefore, that it is plain that defendant intentionally deleted the words "supply ducts" in order to bring the project into line with the normal trade practice.

This concept of what the sentence "clearly" meant certainly cannot be accepted. How plaintiff can rationally construe the deletion of a reference to all supply ducts as somehow nevertheless still maintaining a requirement that some such ducts be covered is most difficult to understand.

Moreover, the reliance on normal trade practice, which is, of course, sometimes given weight in interpreting ambiguous specifications (Gholson, Byars & Holmes Construction Co. v. United States, 351 F.2d 987, 173 Ct.Cl. 374 (1965)) is here wholly misplaced. The trade practice referred to pertains to commercial office buildings. It would not be reasonable to assume that the considerations there involved were applicable to Federal post offices, for the buildings and their uses are so different. In such post of-

---

4. The project specifications, made a part of the bidding documents, carried the following admonition:
"Notice: Questions Regarding These Bidding Documents, Drawings and Specifications Must Be Submitted in Writing and Reach the Issuing Office in Sufficient Time to Permit Issuance of Addenda Not Later Than (7) Calendar Days Before Bid Opening Date."
The contract also contained an Article 2 (like that in Beacon Constr. Co. v. United States, 314 F.2d 501, 161 Ct.Cl. 1 (1963)) directing the contractor to call discrepancies to the attention of the contracting officer.

fices, as the record shows, there has not been any practice concerning duct insulation comparable to commercial office buildings. Indeed, the record shows instead that GSA's normal practice in this regard has been and is just the reverse, i. e., to cover all supply ducts where there are extensive runs thereof and where the presence of large numbers of mail-handling employees in such duct areas would tend to cause an increase in the "load" on the system, making it difficult to maintain proper temperatures and resulting in the possibility of condensation forming and dripping on the mails and the employees. In the post office building here involved, 3,000 to 4,000 people work in such areas. Of course there may be instances where such conditions do not exist and where GSA therefore does not require all supply ducts in all areas to be covered. In such cases, the specifications clearly so provide. But to rely, in support of a strained construction, on an alleged trade practice applicable to different kinds of buildings used for different purposes, is wholly improper.

Finally, to interpret the garbled sentence to mean that defendant was merely broadly requiring such covering as "is necessary for an operational air conditioning system" is wholly unrealistic. For then why have any detailed specifications at all? But it must be obvious that no contract of this size and complexity, and for such a specialized type of building, would intentionally vest such broad discretion in the contractor as to install what "is necessary for an operational air conditioning system", with, according to plaintiff, commercial office building "trade" practice largely being the determining factor. The potential for disputes with such a broad contract provision would be staggering. Surely this tender of a proper interpretation of the amended sentence must be rejected.

■ The record before the Board showed, and the Board found, that in the course of revising the sentence herein involved for inclusion in the addendum, defendant inadvertently omitted the words "supply ducts" after the phrase "air conditioning new , and existing". It held, however, that the omission "does not help the Appellant's position" because paragraph 26–11 of the specifications, which referred to paragraph 82 of the Standard Specification, specifically required that the supply ducts be covered anyway. These provisions, it held, could not, in accordance with the basic contract construction rule that "all parts of the writing and every word in it will, if possible, be given effect", possibly be disregarded. It further held that, if meaning is attempted to be given to the mutilated clause "all air conditioning new and existing shall be covered", the words, read literally, "expand rather than contract the scope of the covering work," since "the term 'air conditioning' is all-inclusive", so that plaintiff's position still would not be improved, but that in any event, it was "very evident" that, in effecting the revision, an inadvertent mistake had been made in omitting the words "supply ducts". And finally, it held that "If there was an apparent conflict or irregularity in the specifications, it was of such nature that the Appellant reasonably should have asked for clarification" and that "the failure of the Appellant to seek clarification under these circumstances was at the Appellant's risk." All these findings and conclusions are well supported factually and soundly based legally. A rational analysis of the amended sentence, including its setting in the paragraph in which it was located and in the NON-CONDUCTIVE COVERING section of the specifications, as well as its relation to the other specification provisions, all made it obvious that an inadvertent omission had been made by defendant.[5] Plaintiff should have made

---

5. The explanation made at the Board hearing as to the genesis of the mistake was that, after the Invitation to Bid was released, defendant's architect-engineer, who drew the plans and specifications, received inquiries from bidders about the

inquiry or brought the matter to defendant's attention. If plaintiff was in fact misled, it was the result of an unreasonable, unilateral mistake for which judicial relief is unavailable. Russell & Pugh Lumber Co. v. United States, 290 F.2d 938, 154 Ct.Cl. 122 (1961).

■■ Plaintiff vigorously protests any reliance upon paragraphs 26–11 of the general specifications and 82 of the Standard Specification which specifically required the covering of the supply ducts, and which the Board strongly emphasized. It says the important paragraph is 26–1, the "Scope of Work" paragraph, and that the Standard Specification is merely designed to describe how the work is to be done. If work is deleted from the Scope paragraph, plaintiff argues, then "the standard with reference to such work would have no further application" because "the Standard Specification cannot be used to determine what work is to be done." (Plaintiff's motion, p. 26.) However, broad generalizations of this kind are not helpful. Each contract and set of specifications must be individually interpreted. Of course, if, for instance, a "Scope" paragraph provided that no sidewalks should be installed on a project, standard specifications describing how sidewalks should be installed and what materials should be used therein would necessarily be inapplicable. The cases upon which plaintiff relies are of such

nature. But that is not the situation here. This particular Standard Specification did more than simply describe how the work was to be done, or what materials were to be used. Paragraph 82 thereof said flatly: "The following shall be covered: All supply ducts * * *." Nothing could be plainer.[6] And it was referenced into the general specifications by paragraph 26–11, contained in the same section as 26–1, the Scope of Work paragraph. And, as stated, the revised 26–1 is no way in conflict. Clearly, in these circumstances this "Scope of Work" contention upon which plaintiff places such strong reliance, to the complete disregard of paragraph 26–11 of the general specifications and paragraph 82 of the Standard Specification, must be rejected. All parts of the specifications must be read together and harmonized, if at all possible. Hol-Gar Manufacturing Corp. v. United States, 351 F.2d 972, 979, 169 Ct.Cl. 384, 395 (1965), and cases cited therein. There was absolutely nothing here to prevent said paragraphs 26–11 and 82 from being given full effect.

■■ The elementary rule of resolving ambiguities against the drafter of the writing, upon which plaintiff also relies, is here inapplicable. A prerequisite to the application of this rule is that the alternative interpretation placed upon the alleged ambiguity by the contractor be, under all the circumstances, a reasonable

phrase "new and existing supply ducts" and whether it was defendant's intent that the "existing" duct work be covered too. The building already had a ventilation system, including ventilation ducts. These ducts were, under the contract work, to be cut into and converted into air conditioning ducts in the new system, and the bidders were inquiring whether such existing duct work was also to be covered. The architect-engineer felt that the insertion of another "to be covered" phrase directly after the words "new and existing supply ducts" would serve to clarify this point for the bidders and therefore decided to include a revised sentence as one of the items in the addendum, which contained 23 modifications. However, in preparing the revised sentence for inclusion in the addendum, the words "supply ducts" were inadvertently omitted.

6. Plaintiff's attempt (Reply Brief, p. 9) to import an ambiguity in paragraph 82 itself as to the supply ducts to be covered must certainly be rejected. There is simply nothing in the structure of that paragraph that could reasonably affect its plain meaning that all supply ducts should be covered. Anyone who could possibly come to a result different from the clear grammar of that paragraph surely should at least have made appropriate inquiry to clear up the doubt in his mind. Until plaintiff so contended here, it does not appear that any contractor or subcontractor had ever previously even hinted at any such alleged ambiguity.

and practical one. (Jefferson Construction Co. v. United States, 151 Ct.Cl. 75, 84 (1960); WPC Enterprises, Inc. v. United States, 323 F.2d 874, 877, 163 Ct.Cl. 1, 6 (1963)). As already pointed out, in view of the only possible meanings that could rationally be applied to the amended "Scope of Work" paragraph, especially when interpreted in conjunction with paragraph 26–11 and the Standard Specification referenced therein, the interpretations plaintiff has relied on do not meet this test.

■■■■■ The Board, in arriving at its legal conclusion concerning the proper interpretation of the contract, found certain facts, such as those pertaining to defendant's actual intent, the inadvertent omission of the words "supply ducts", and defendant's insulation practices for projects of this kind. These factual findings are well supported. It is true, of course, that the ultimate issue, being one of contract interpretation, is a question of law. Hol-Gar Manufacturing Corp. v. United States, supra. Accordingly, the Board's decision with respect thereto is not subject to Wunderlich Act finality, 68 Stat. 81, 41 U.S.C. §§ 321–322 (1958 ed.). However, as the above detailed analysis demonstrates, an independent judicial inquiry compels the same result. Thus, whether the issue be deemed to be one of law, or fact, or a mixed law-fact one, the final result would be no different.[7]

Consequently, plaintiff's motion for summary judgment should be denied, defendant's cross-motion granted, and plaintiff's petition dismissed.

---

7. Under the Board's rules permitting requests for reconsideration if based upon "newly discovered evidence" or a point of law, plaintiff made such a motion and attached thereto a number of documents. The Board denied the motion. Although it obviously considered the materials presented with the motion as not constituting "newly discovered evidence", it nevertheless did consider them and, in another opinion, explained why, despite "the well argued presentation by Appellant's counsel", it felt them to be insufficient, as well as why it concluded that no legal error had been committed. The Board's carefully considered action on this motion was certainly not arbitrary or capricious. Normally, a motion for a new trial or a rehearing on the ground of newly discovered evidence is directed to the sound discretion of the trial tribunal and is not reviewable except for an abuse of discretion. Pacific Contact Laboratories, Inc. v. Solex Laboratories, Inc., 209 F. 2d 529, 534 (9th Cir. 1953), cert. denied 348 U.S. 816, 75 S.Ct. 26, 99 L.Ed. 643 (1954).

The "newly discovered evidence" plaintiff presented consisted of letters from various contractors concerning trade practice, letters from other bidders who allegedly construed the specifications as did plaintiff, letters from consulting engineers supporting plaintiff's interpretation, a cost estimate allegedly prepared by a cost consultant retained by defendant's architect-engineer, claimed to show the amount budgeted for supply duct insulation, and a progress report and schedules from which inferences were drawn as to the parties' intent during contract performance.

Why all of this material, or the witnesses themselves could not have been presented at the hearing is not apparent. Some of these documents, like the progress report and schedules, obviously require explanation. Litigants should not, on a motion for reconsideration, be permitted to attempt an extensive re-trial based on evidence which was manifestly available at time of the hearing. See FEDERAL RULES OF CIVIL PROCEDURE, Rule 60(b) (2), which makes a showing of "due diligence" a prerequisite to proceedings based on "newly discovered evidence". This court's Rule 69(b) (2) similarly so requires.

In any event the Board was not persuaded that the proferred evidence called for a reversal of its decision for the reason, among others, that "trade practice" was in this instance irrelevant (as already held); that the tendered opinions concerning proper interpretation were unconvincing; and that the unexplained cost estimate, being dated prior to the issuance of the original Invitation for Bids, and therefore necessarily referring to the original specifications, about which there was no interpretation problem, was again irrelevant.