Per Curiam:
Plaintiff seeks to recover additional costs allegedly incurred in tbe performance of a contract with the Department of the Navy, acting through the Bureau of Yards and Docks, under which plaintiff, for the sum of $3,408,713, agreed to furnish the materials and perform the work for the construction of 60 ammunition storage magazines, roads, railroads, and extensions to water and fire alarm systems at the Naval Ammunition Depot, McAlester, Oklahoma. The contract contained the standard “Changes”, “Changed Conditions”, and “Disputes” articles.
This case is concerned only with the construction of the magazines. Plaintiff’s bid was based on an estimate which contemplated that it would prepare for magazine footings by performing general excavation of high ground in a designated magazine site to specified elevation, filling in the low ground in a magazine site with suitable fill to the same elevations, compacting to the specified Proctor density, and then making trenches for footings in the natural ground or fill so prepared, as the case might be, down to the specified elevations for installing the footings. The plan was to make these trenches with a trenching machine, which would cut to neat widths and depths reflecting the dimensions of the concrete footings specified. In the trenches, so cut, plaintiff proposed to pour the concrete footings, without the use of forms.
As a result of being required by defendant to pour concrete footings for the magazines in wooden forms instead of in earth trenches, plaintiff submitted a claim for an increase in the contract price. The contracting officer denied plaintiff’s claim; on appeal, the Armed Services Board of Contract Appeals finally awarded plaintiff an equitable adjustment in the sum of $34,070.04.
Plaintiff challenges the finality of the equitable adjustment determination made by the Board, contending that its decision as to amount was arbitrary, capricious, and not supported by substantial evidence. The demand is for an additional $177,958.86, said to represent the difference between the amount of the equitable adjustment allowed by the Board and the increased costs incurred by plaintiff in constructing the magazines in the manner required by defendant. The *297 suit is presented to the court on an Assignment of Errors filed by plaintiff and defendant’s response thereto. ■ No de novo evidence was taken and the record consists solely of the administrative record before the Board.
Commissioner Franklin M. Stone has written a thorough, careful, and detailed opinion, under Buie 57(a), setting forth and analyzing the evidence, the parties’ factual contentions before the Board, the Board’s factual determinations, and the history of the administrative proceedings. Since these matters are tied so closely to the particular facts and circumstances of this litigation, and will be of slight or no preceden-tial value in other cases, we think it unnecessary to set them forth in extenso. Our opinion will be confined to the legal issues still disputed by the parties, and to a statement of the extent to which we agree with the trial commissioner.
The first issue arises out of the fact that there were two successive appeals to the ASBCA on the problems now involved. On the first appeal, the Board held plaintiff entitled, on certain grounds, to an equitable adjustment under the “Changes” article. That determination of liability is no longer an issue. The whole case now turns on the amount of the award. As to the amount, the Board ruled on the first appeal that the Government’s evidence was more reliable than plaintiff’s, subject to one stated correction. The case was remanded to the contracting officer for the purpose of revising the Government’s computation on the basis indicated, and of computing in dollar figures an equitable adjustment on the basis indicated in the Board’s opinion.
The contractor moved for clarification of the Board’s decision, seeking to have it made clear that the remand would permit a full exploration of plaintiff’s actual costs, as it thought them to be. This motion was denied in an opinion which said, among other things, that “Appellant had ample opportunity at the hearing to present correct computations, and evidence of any deficiencies in the Government’s computations” and that “with respect to the computations, Appellant’s motion does not present any matters that were not necessarily involved in the hearing and that could not have been raised by Appellant prior to submission of the case for decision.”
*298 Dissatisfied with the contracting officer’s determination on remand ($31,500), the plaintiff appealed again to the Board. On this second appeal, the hearing member of the Board issued a pre-trial memorandum, after conferences with the parties, saying that it was the Board’s understanding that the new hearing would be limited to the following issues:
“A. The issue, to be heard as if it arose de novo, as to what amounts, if any, are properly includable in arriving at the estimated excess cost of pouring footings with forms in lieu of without forms, restricted, however, to the following elements of cost [specifying a number of such elements]
“B. The issue of whether or not inquiry into the elements and amount of the equitable adjustment is foreclosed in whole or in part by the Board’s [previous] decision * *
Under this pre-trial order, a second hearing was held (before a single member) at which both parties presented considerable additional evidence.
Thereafter, a three-member panel of the Board held that most of the factors in the contracting officer’s computation which the plaintiff questioned on the second appeal “were presented by the Government as evidence on the former appeal and were adopted by the Board. The decision on that appeal having become final, those factors are not open to modification in the present proceedings.” On the matters deemed still open after the prior decision, the Board held that an additional allowance of $2,570.04 should be made. This gave plaintiff a total administrative allowance of $34,070.04 (which has been paid).
Plaintiff now urges that the Board erred in refusing to take account of most of the new evidence and argument presented on the second appeal. We agree with the trial commissioner that the Board did not err. The decision on the first appeal, and the denial of the contractor’s motion for clarification of that decision, made clear the narrow scope of the remand to the contracting officer. The pre-trial memorandum, at the outset of the second appeal, allowed the taking of de novo evidence going beyond that narrow remand, but simultaneously the memorandum preserved the question of *299 whether or not that de novo evidence could or would be ultimately considered in the decision of the second appeal. The plaintiff was thus put on notice that its de novo evidence might well prove entirely fruitless. Neither the pre-trial memorandum nor the statements of the hearing member at the time should have led it to think otherwise. When the three-member panel of the Board, in deciding the second appeal, came to consider whether it would take account of the new evidence, it decided not to do so. It refused to reopen its first decision (and to consider the de novo evidence). This was well within its discretion. In the circumstances it had the right, if it wished, to consider the first decision as final and not subject to reconsideration. Cf. Celco Builders & Burjay Constr. Corp. v. United States, 177 Ct. Cl. 1025, 1036 n. 7, 369 F. 2d 992,1000 (Dec. 1966); Flota Mercante Gran Colombiana S.A. v. Federal Maritime Comm'n, 373 F. 2d 674, 679 (C.A.D.C. 1967).
On this view, the evidence at the second hearing must be deemed excluded from the case, and the Board’s findings must be tested against the evidence submitted at the first hearing. The trial commissioner erred in ruling that, despite the lawfulness of the Board’s decision to take no account of the de novo evidence, the entire administrative record must nevertheless be evaluated by the court in applying the Wunderlich Act’s standards. The Act does not require the reviewing court to consider evidence in the record which the administrative tribunal had a right to disregard and did disregard.
But, with one minor exception, we think that the commissioner was correct in the result he reached. He felt that, in largest part, the Board’s determinations passed muster. Insofar as he based this conclusion on the evidence at the first hearing, we agree, in general, with his analysis and comments (including his conclusion that Exhibit B-65 was properly received and constituted substantial evidence). The Board’s factual determinations were not arbitrary, capricious, or unreasonable. On the contrary, they were supported by substantial evidence in the record of the first hearing. In fact, plaintiff hardly argues that, if the record is properly restricted to the initial hearing and if Exhibit B-65 *300 was properly a part of that record, the administrative findings should be set aside.
In the one respect in which the trial commissioner departed from the Board’s findings — the cost of stripping forms and removing bracing from reinforcing steel — he relied heavily on evidence introduced at the second hearing. As we have indicated, this should not have been done. The Board’s finding on this item was adequately sustained by the evidence at the first hearing, and should have been upheld. Plaintiff is therefore not entitled to the additional $1,014.75 which the commissioner thought should have been allowed on this item.
It follows, also, from our conclusion that the Board did not err in continuing to act on the basis of the evidence at the first hearing that plaintiff is not now entitled to have the Board reconsider the case at a new hearing to be hereafter held, or to have the amount of the award redetermined by a trial in this court. Since the Board’s rulings caimot be invalidated under the Wunderlich Act, there is no basis for a further administrative hearing or for a court trial. United States v. Carlo Bianchi & Co., 373 U.S. 709 (1963); United States v. Utah Constr. & Mining Co., 384 U.S. 394 (1966); United States v. Anthony Grace & Sons, Inc., 384 U.S. 424 (1966). The plaintiff’s motion for suspension or, in the alternative, for a court trial de novo is denied.
On the whole case, the court holds that plaintiff is not entitled to recover any more than has been administratively allowed to it, and the petition is dismissed.