**Craig J. BISHOP, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–3998C.**

United States Claims Court.

April 6, 1992.

Order on Reconsideration July 21, 1992.

Jack E. Carter, Fayetteville, N.C., for plaintiff.

J. Peter Mulhern, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, and James M. Kinsella, Washington, D.C., for defendant. Lieutenant Colonel W. Gary Jewell and Captain W. Renn Gade, Office of Judge Advocate General, of counsel.

## OPINION

BRUGGINK, Judge.

Captain Bishop's fourteen year career as an officer in the Army was involuntarily terminated because of an alleged act of "moral and professional dereliction," to wit, falsification of a test score on an application to graduate school. Because the court finds that the evidence in support of the accusation was insubstantial, plaintiff's pending cross-motion for summary judgment is granted.

## FACTS

At the time of his discharge, plaintiff was a captain in the U.S. Army. He began his active duty in 1976, was promoted to first lieutenant in 1978, and to captain in 1982. In 1986, following a number of favorable Officer Efficiency Reports ("OER"),[1] Captain Bishop was recommended for promotion to major. In December 1987, he took a foreign language proficiency examination administered by the Army. Captain Bishop was going to apply for graduate study at Boston University. The Army contends, and plaintiff does not

---

**1.** The OER's are remarkably laudatory. Plaintiff was obviously well regarded by his superiors prior to the incident at bar.

dispute, that he scored an R–10 on the test. Captain Bishop did not receive the graded test. Instead, in January 1988, he received a DA Form 330, a standardized form that was supposed to accurately reflect the test score. The form was filled in and signed by a Sergeant Coleman. The original DA Form 330 was sent to Boston University by plaintiff and is not in the record. Although the record submitted by the Army does not contain a copy of the Form 330, plaintiff has submitted one. It reflects that he received a score of R–20 on his exam rather than R–10. Captain Bishop was under the impression that the minimum score needed was a 22, but he hoped for a waiver. The actual minimum score was R–30, but he nevertheless was admitted into the graduate program.

Apparently based on a statement made by SFC Evans, a mail handler at plaintiff's base, Major Philbrick, plaintiff's superior, conducted an investigation into whether Captain Bishop altered the Form 330 he sent to the university. SFC Evans apparently received plaintiff's Form 330 and gave it to him. One of the few items generated by the investigation that appears in the administrative record is a Letter of Reprimand ("LOR"), issued on September 14, 1988, by General Haddock.[2] The LOR accused plaintiff of falsifying his test score and demanded a response.

Captain Bishop denied the charges and alleged that they arose due to personal animosity and command influence exerted by Major Philbrick. Based on plaintiff's responses, General Haddock ordered an informal investigation under Army Regulation 15–6. The results of this investigation are also not in the record. The Army alleges in these proceedings that the investigating officer took sworn testimony and made independent fact findings. The independent investigator ultimately concluded the LOR was justified. On October 21, 1988, General Haddock concurred in this result and directed the LOR be filed in Captain Bishop's official Military Personnel File.

In September 1988, during the independent investigation, Captain Bishop was relieved of his duties. In addition, he received an adverse OER. Pursuant to Army Regulation 624–100, the LOR and the OER were submitted to the Department of the Army Suitability Evaluation Board ("DASEB") as a basis for reconsideration of his impending promotion. The DASEB recommended that Captain Bishop be removed from the promotion list. On November 6, 1989, he was notified he would not be promoted.[3]

Captain Bishop appealed the LOR to the DASEB in July 1990. He submitted a lengthy denial of the foregoing allegations supported by evidence of his moral character. This appeal is in the record before the court. Contemporaneously he appealed his adverse OER to an Officer Special Review Board ("OSRB"). On August 16, 1990, the OSRB concluded the OER was justified and denied plaintiff's appeal. Eleven days later, the DASEB denied Captain Bishop's request to remove the LOR from his personnel file.

In January 1990, Captain Bishop was notified he was being considered for involuntary release from active duty by the Department of the Army Active Duty Board ("DAADB"). The DAADB reevaluated the evidence and determined he should be involuntarily released from active duty because of his "significant act of moral and professional dereliction." The DAADB notified plaintiff of its decision on August 17, 1990, and he was honorably discharged on December 10, 1990.

Captain Bishop did not seek review by the Army Board for Correction of Military Records. The complaint here was filed on December 10, 1990. He alleges that the Army's failure to delete the LOR and the OER, as well as the decision to discharge him, were arbitrary, capricious, and not based on law or fact. He requests relief in the form of correction of his military

2. As noted above, SFC Evans' statement or affidavit is not contained in the record. Nor is Major Philbrick's report to General Braddock.

3. The Government concedes that had this matter not arisen, plaintiff would have been promoted to major.

records, reinstatement as a major, and back pay.

## DISCUSSION

■ Although judicial review of the decisions below is available, it is limited to determining whether the record demonstrates that they were arbitrary or capricious, contrary to law or regulation, or unsupported by substantial evidence. *Chappell v. Wallace,* 462 U.S. 296, 303, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983); *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.), *cert. denied,* 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986); *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed. Cir.1983); *Grieg v. United States,* 226 Ct. Cl. 258, 270, 640 F.2d 1261, 1268 (1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982). The parties agree that only the latter inquiry is relevant here.

The record is devoid of any documents or affidavits other than those furnished by Captain Bishop. The only support for the charge that plaintiff altered his test scores are the references in his own appeal to the DASEB, which merely summarizes what plaintiff believed the Army was arguing. At those critical points in the Government's brief at which one would expect to find references to original statements or documents, there is nothing except references to Captain Bishop's denials.

Plaintiff admits in his appeal that he asked SFC Silvestri how to operate a typewriter, and made a comment that he needed a higher score on his reading exam. In Silvestri's presence he "typed on" an earlier DA Form 330 than the one in question. He also admits that on receiving the later DA Form 330 he made the passing comment to SFC Evans "that my score was still too low for Boston University admission standards and how hard it would be to get the score changed." These two facts, coupled with the admitted difference between what Bishop scored on the test and what the DA Form 330 reflected constitute the entirety of the military's case against Captain Bishop.

From these stray filaments, defendant purports to weave a noose. It declares as undisputed fact that plaintiff "altered a DA Form 330 [in 1987] which reflected the results of a 1985 examination." Defendant's Proposed Findings of Uncontroverted Fact No. 5. The only thing Captain Bishop admitted, however, is that he "typed on" an earlier DA Form 330 and threw it away. He does not admit "altering the results of the examination." The Government has no other independent proof that he altered his 1987 test scores, or for that matter, that the scores were even altered. Captain Bishop's statement that it would be hard to change the score could be entirely innocent, and by itself is too ambiguous to support any negative inferences.

The decisions of the DASEB and the OSRB show no consideration of the exculpatory and character evidence Captain Bishop introduced below, and which, due to the lack of a complete administrative record, he has offered here. *See Heisig,* 719 F.2d at 1157 (substantial evidence test requires consideration of all competent evidence, not just that supportive of determination below). CSM Barnes, the soldier who certified plaintiff's copy of Form 330 which was sent to Boston University, submitted to the OSRB a statement that the form did not appear to him to be altered. In a sworn statement, Major Wise, a peer of Captain Bishop, declares that he saw the original Form 330 and felt that it was not altered. "The DA form 330 did not in any way appear to be altered, there was no whiteout, erasures, not even any smudges that I could see." Wise also corroborates plaintiff's assertion that he believed a score of R–20 would probably not get him into Boston University absent a waiver of the R–30 standard.

An affidavit by Sergeant Coleman, the soldier who typed plaintiff's original Form 330 and mailed it to him, confirms that no copy of this original was saved by him for Army records. He also admits that "[i]t is possible in my rush to complete everything as quickly as possible that I typed the Reading score from another person's test sheet. When I was typing the 330's I had all of the test sheets next to the typewriter and may have looked at the wrong sheet

when typing...." There was also ample evidence of Captain Bishop's competence and character for integrity.

To conclude that the Army's actions were supported by substantial evidence would be a miscarriage of justice. *Accord Skinner v. United States*, 219 Ct.Cl. 322, 333, 594 F.2d 824, 830 (1979). There is absolutely no direct evidence that Bishop's score was altered. The circumstantial evidence relied on by the Army is no more than a vapor. The administrative record is devoid of supporting material. It is at best ironic for the Government to accuse a serviceman of serious misconduct, and then, based solely on his denials, ask the court to assume there must have been some valid basis for the adverse actions. To quote Tallulah Bankhead, "There is less in this than meets the eye." The inclusion of the LOR and the adverse OER in his records was thus improperly prejudicial to Captain Bishop, and resulted both in his non-promotion and subsequent discharge.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment is granted. The parties have agreed to stipulate to the appropriate remedy by April 23, 1992. Judgment will be deferred until the stipulation is received.

## ORDER ON RECONSIDERATION

Pursuant to RUSCC 59, defendant has moved for reconsideration of the opinion of April 6, 1992. This decision reversed the Army's involuntary discharge of Captain Bishop on the ground that the action was not supported by substantial evidence. For the reasons that follow, the motion is denied.

"[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743, 105 S.Ct. 1598, 1606, 84 L.Ed.2d 643 (1985) (quoting *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973)). Similarly, the Claims Court has recognized that judicial review in military pay cases should be limited to the record developed before the administrative decision-maker, *Long v. United States*, 12 Cl.Ct. 174, 176 (1987) (citing *Park v. United States*, 10 Cl.Ct. 790, 793 (1986); *Voge v. United States*, 11 Cl.Ct. 510 (1987), *modified on other grounds*, 844 F.2d 776 (Fed. Cir.1988); *Jones v. United States*, 7 Cl.Ct. 673 (1985)), and that new evidence should be allowed during judicial review only if it was unavailable below. *Long*, 12 Cl.Ct. at 176.

The Government has not asserted that the supplemental evidence which it seeks to introduce was part of the administrative record, nor does it contend that these documents were ever considered by the Department of the Army Suitability Evaluation Board, the Officer Special Review Board, or the Department of the Army Active Duty Board. Because this evidence was never made part of the administrative record, the court would not have considered this information in the original summary judgment proceedings and clearly cannot consider this evidence now. The simple answer to the motion is that it does not show error. In the record presented to the court, there was no substantial support for the final determination below.

Even if this supplemental information had been a part of the administrative record, the court would not allow it to be introduced here for the first time after the close of litigation. It is well recognized that "[a] motion for reconsideration is addressed to the discretion of the trial court." *Triax Co. v. United States*, 20 Cl.Ct. 507, 509 (1990) (citing *Eyre v. McDonough Power Equip.*, 755 F.2d 416, 420 (5th Cir.1985) (construing FRCP 59)); *see Yuba Natural Resources, Inc. v. United States*, 904 F.2d 1577, 1583 (Fed.Cir.1990); *Gelco Builders & Burjay Constr. Corp. v. United States*, 177 Ct.Cl. 1025, 1036 N. 7, 369 F.2d 992, 1000 n. 7 (1966). Post-opinion motions to reconsider are not favored, *General Elec. Co. v. United States*, 189 Ct.Cl. 116, 117–118, 416 F.2d 1320, 1321 (1969)). It is well-settled that "[t]he court has a right to know before it decides [the controversy at

hand] whether the parties have anything further to present." *General Elec. Co.*, 189 Ct.Cl. at 118, 416 F.2d at 1322.

■ Generally, "[a] motion under RUSCC 59 must be based upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court." *Circle K Corp. v. United States*, 23 Cl.Ct. 659, 664 (1991). The movant must show either that an intervening change in the controlling law has occurred, evidence not previously available has become available, or that the motion is necessary to prevent manifest injustice. *Weyerhaeuser Corp. v. Koppers Co.*, 771 F.Supp. 1406, 1419 (D.Md.1991). "Litigants should not, on a motion for reconsideration, be permitted to attempt an extensive retrial based on evidence which was manifestly available at [the] time of the hearing." *Gelco*, 177 Ct. Cl. at 1036–37 n. 7, 369 F.2d at 1000 n. 7. The litigation process rests on the assumption that both parties present their case once, to their best advantage.

The documents which the Government now seeks to introduce were kept in the files of the officer who initiated the disciplinary investigation. The Government's failure to bring these materials to the court's attention during the summary judgment proceedings is utterly without excuse.[1] Nor has the Government convinced the court that allowing reconsideration would prevent a manifest injustice. While the evidence now offered is clearly better grounds for involuntary separation,[2] it is at bottom, circumstantial. It may well have negated an assertion that the determination below was arbitrary or capricious, but that no longer is the relevant inquiry.

The Government's motion for reconsideration and remand is denied. The parties are directed to file their stipulations as to relief on or before September 21, 1992.

---

1. The counsel of record for defendant named in this order was not defendant's counsel during the proceedings referenced in this order.

2. The court's order does not, of course, preclude the Army from reinstituting involuntary termination proceedings, assuming plaintiff's enlistment term has not expired in the interim.