**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**May 13, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JESUS ANTILLO-QUINTERO,

Defendant - Appellant.

No. 22-1042
(D.C. No. 1:20-CR-00028-RM-14)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **KELLY**, and **McHUGH**, Circuit Judges.
_____

Jesus Antillo-Quintero appeals from his sentence despite the appeal waiver in his plea agreement. The government now moves to enforce that waiver under *United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004) (en banc) (per curiam). Through counsel, Antillo-Quintero responds that the appeal waiver does not encompass the argument he intends to make on appeal and that enforcing the waiver would be a miscarriage of justice. For the reasons explained below, we grant the government's motion.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    BACKGROUND & PROCEDURAL HISTORY

In early 2020, a grand jury in the District of Colorado indicted Antillo-Quintero and numerous others on drug-conspiracy and related charges. Antillo-Quintero chose to plead guilty to the drug-conspiracy charge in exchange for the government's agreement to dismiss other charges and to recommend that he receive credit for acceptance of responsibility.  Antillo-Quintero and the government embodied this deal in a written plea agreement containing the following appeal waiver:

> The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined.  Understanding this, and in exchange for the concessions made by the Government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the advisory guideline range that applies to a total offense level of 29 or, if applicable, the statutory mandatory minimum sentence; or (2) the Government appeals the sentence imposed.

Mot. to Enforce Appeal Waiver, Attach. 1 ("Plea Agreement") at 2.

At the change-of-plea hearing, the district court explained the concepts of "total offense level of 29" and "statutory mandatory minimum sentence," and confirmed Antillo-Quintero's understanding of the appeal waiver.  The district court further explained that the mandatory minimum sentence in question was ten years. Finally, the court announced that, assuming the mandatory minimum applied, the court could sentence below that only if Antillo-Quintero substantially assisted the

government, *see* 18 U.S.C. § 3553(e), or if he met the requirements of the so-called "safety valve" provision in 18 U.S.C. § 3553(f).

Based on Antillo-Quintero's answers to the district court's questions on these and other topics, the district court found that Antillo-Quintero had competently, knowingly, and voluntarily entered into the plea agreement. The court accordingly accepted the agreement and set the matter for sentencing.

At sentencing, no party disputed that the mandatory ten-year minimum would apply if Antillo-Quintero did not qualify for safety-valve relief. Thus, the bulk of sentencing hearing focused on the safety-valve requirements.

Under the circumstances of the case, the first safety-valve question for the district court was whether Antillo-Quintero possessed a firearm "in connection with the offense." *Id.* § 3553(f)(2). Law enforcement officials had executed a search warrant for Antillo-Quintero's home and discovered firearms. Antillo-Quintero argued, however, that the evidence did not show a connection to his offense because the government had surveilled him and his co-conspirators for an extended time and the results of that surveillance (*e.g.*, wiretap recordings) never mentioned firearms. The district court concluded this was not enough to meet the defendant's burden to show a lack of connection.

Although that ruling was enough to deny safety-valve relief, the court and the parties also debated a different safety-valve condition, namely, whether Antillo-Quintero had fully disclosed to the government what he knew about the offense and the others involved. *See id.* § 3553(f)(5). The district court announced

its impression that, in light of what Antillo-Quintero divulged, his failure to divulge related details suggested he had attempted to give the appearance of cooperation without fully cooperating. Antillo-Quintero objected that the government never asked about the additional details and he had no reason to suspect the government wanted that information. He further requested a continuance so he could provide whatever additional details the government might want. The district court denied that request and found he had not carried his burden to show full cooperation.

Because the safety valve did not apply, the district court sentenced Antillo-Quintero to the mandatory minimum of ten years' imprisonment. Antillo-Quintero timely appealed, prompting the government to file the motion now at issue.

## II.    ANALYSIS

The government's motion to enforce requires us to ask three questions: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Hahn*, 359 F.3d at 1325. We address them in turn.

### A.    Scope of the Waiver

Antillo-Quintero intends to argue on appeal that the district court made "an erroneous and/or unconstitutional evaluation of the 'safety valve' factors," in violation of his due process rights. Def.'s Resp. to Gov't Mot. to Enforce Appeal

Waiver ("Response") at 2, 3.  The government contends that this argument falls within the appeal waiver.  We agree with the government.

Again, the waiver contains two narrow exceptions: "(1) the sentence exceeds the advisory guideline range that applies to a total offense level of 29 or, if applicable, the statutory mandatory minimum sentence; or (2) the Government appeals the sentence imposed."  Plea Agreement at 2.  Antillo-Quintero received the statutory mandatory minimum sentence and the government has not appealed.  On its face, then, no exception permits this appeal.

Antillo-Quintero does not argue that the words "if applicable" preserve his proffered safety-valve challenge.  He instead argues from a different section of the plea agreement, ten pages later, which states,

> The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that *reasonable sentence* which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

*Id.* at 12–13 (emphasis added).  Thus, he says, "it is clear that the appeal of an unreasonable and unconstitutional sentence did not fall in the scope of the appeal waiver."  Response at 2.

We recognize that appeal waivers are construed narrowly, *see Hahn*, 359 F.3d at 1325, but Antillo-Quintero's interpretation—based on language in a later section

with no obvious relation to the appeal waiver—would empty his appeal waiver of meaning. "[C]ontract principles govern plea agreements." *Id.* at 1324–25. "[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect[.]" Restatement (Second) of Contracts § 203(a) (1981). Here, the "reasonable sentence" passage quoted above is best understood in context, not as qualifying the appeal waiver, but as affirming the district court's discretion despite what the parties may argue, particularly regarding guidelines calculations. *See also* Plea Agreement at 12 (noting that the parties' guidelines calculations do not bind the court and that any party's calculation does not prevent the party from requesting a departure or variance).

Antillo-Quintero further argues that the supposed interplay between the appeal waiver and the "reasonable sentence" passage at least creates an ambiguity. *See Hahn*, 359 F.3d at 1325 (noting that ambiguities will be construed against the government). But courts generally define contractual ambiguity as "the possibility that a word or phrase in a contract might reasonably and plausibly be subject to more than one meaning." 11 Richard A. Lord, Williston on Contracts § 32:12 (4th ed., May 2022 update). Standing alone, the appeal waiver does not satisfy this standard, and we do not view the "reasonable sentence" passage ten pages later as rendering the appeal waiver plausibly subject to an implied exception that nullifies the explicit exceptions. *Cf. Gelco Builders & Burjay Constr. Corp. v. United States*, 369 F.2d 992, 999–1000 (Ct. Cl. 1966) (per curiam) ("[T]he alternative interpretation placed

6

upon the alleged ambiguity by the contractor [must] be, under all the circumstances, a reasonable and practical one.").

For these reasons, we find that this appeal falls within Antillo-Quintero's appeal waiver.

### B.    Knowing and Voluntary Waiver

Normally, we would next ask "whether the defendant knowingly and voluntarily waived his appellate rights." *Hahn*, 359 F.3d at 1325. But we need not address a *Hahn* factor that the defendant does not dispute, *see United States v. Porter*, 405 F.3d 1136, 1143 (10th Cir. 2005), and Antillo-Quintero does not raise any argument in this regard. We therefore deem him to concede that his waiver was knowing and voluntary.

### C.    Miscarriage of Justice

Last, we ask "whether enforcing the waiver would result in a miscarriage of justice." *Hahn*, 359 F.3d at 1325. A miscarriage of justice occurs "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." *Id.* at 1327 (bracketed numerals in original; internal quotation marks omitted).

Antillo-Quintero relies on the otherwise-unlawful prong, arguing that the district court egregiously violated his due process rights when it denied him safety-valve relief. But the otherwise-unlawful inquiry focuses on the waiver. It is

not a license to inquire "whether another aspect of the proceeding may have involved legal error." *United States v. Smith*, 500 F.3d 1206, 1213 (10th Cir. 2007); *see also United States v. Holzer*, 32 F.4th 875, 2022 WL 1207861, at *9 (10th Cir. Apr. 25, 2022) ("[T]he occurrence of constitutional errors during sentencing is [not] sufficient to establish that the waiver itself was unlawful."). Antillo-Quintero's attack on the district court's safety-valve conclusion is an attack on the lawfulness of his sentence, not his appeal waiver.

Absent any meritorious argument from Antillo-Quintero that his waiver was otherwise unlawful, we find that enforcing the waiver would not result in a miscarriage of justice.

## III.    CONCLUSION

This appeal falls within Antillo-Quintero's appeal waiver, and no other *Hahn* factor counsels against enforcement of the waiver. We therefore grant the government's motion to enforce the waiver and dismiss this appeal.

> Entered for the Court
> Per Curiam