**FLAGSHIP FEDERAL SAVINGS BANK, et al., Plaintiffs,**

**v.**

**M. Danny WALL, Director, etc., et al., Defendants.**

**Civ. No. 90–0079–GT (BTM).**

United States District Court,
S.D. California.

Feb. 14, 1990.

Daniel H. Willick, Robert Steiner and Christopher J. Healey, for plaintiffs.

Robin Ball, Loretta Pitt, George Barnwell and Asst. U.S. Atty. John Neece, for defendant Federal Deposit Ins. Corp.

Aaron B. Kahn, for defendant M. Danny Wall, Director, Office of Thrift Supervision.

## ORDER AND MEMORANDUM DECISION

GORDON THOMPSON, Jr., Chief Judge.

Plaintiffs' motion for a temporary restraining order came on for a closed hearing on January 26, 1990 at 11:00 a.m. Daniel H. Willick, Robert Steiner, and Christopher J. Healey appeared on behalf of plaintiffs. Robin Ball, Loretta Pitt, George Barnwell and Assistant United States Attorney John Neece appeared on behalf of defendant Federal Deposit Insurance Corporation. Aaron B. Kahn. appeared on behalf of defendant M. Danny Wall, Director, Office of Thrift Supervision. Having reviewed the pleadings, exhibits, declarations, and arguments in favor of and in opposition to the motion, the court hereby denies the motion and orders that the seal on the file be lifted.

BACKGROUND

Flagship Federal Savings and Loan is a federally chartered savings bank. In No-

vember, 1988, investors acquired Flagship by way of a supervisory conversion and acquisition of Flagship Federal Savings and Loan Association of San Diego, California, pursuant to terms set forth in Federal Home Loan Bank Board ("FHLBB") Resolution No. 88–1243 and FHLBB Resolution No. 88–1246. FHLBB Resolution No. 88–1243 authorized and directed "the Secretary or an Assistant Secretary ... to send to the New Association ("Flagship") a letter concerning supervisory forbearances by the Bank Board and the Federal Savings and Loan Insurance Corporation ("FSLIC") with respect to certain regulatory requirements" in the form of a forbearance letter.

On November 30, 1988, the FHLBB sent a forbearance letter to the Board of Directors of Flagship. In pertinent part it stated:

> Section 563.313 (Regulatory Capital Requirement) of the Rules and Regulations for FSLIC Insured Institutions ("Insurance Regulations") provides no exceptions in the case of acquisitions which permit the exclusion of scheduled items of an institution in computing the regulatory capital requirements of this section. However, because this acquisition was instituted for supervisory reasons, the FSLIC will forbear, for a period not to exceed five years following the date of consummation of the acquisition ("Effective Date"), from exercising its authority under Section 563.13 of the Insurance Regulations, for any failure of the surviving institution, New Flagship, to meet the regulatory capital requirements of Section 563.13, *provided* that New Flagship's level of regulatory capital to total liabilities is no less than 2.0 percent during the first year. This percentage floor will increase by .50 percent for years two through five until it reaches 4.0 percent upon expiration of the Assistance Agreement, at the conclusion of year five, after which New Flagship shall be in compliance with the minimum capital requirement ...
>
> ... For a period of five years following the Effective Date, the Board will consider New Flagship to be in compliance with the regulatory capital requirement of

> Section 563.13 of the Insurance Regulations, to the extent of the forbearance received in Item 1, for purposes of reviewing applications and/or filings for permission or notice to conduct business pursuant to the following referenced regulations; *provided* that the Supervisory Agent of the Federal Home Loan Bank of San Francisco ("Supervisory Agent") shall retain the authority to rescind all or any of a portion of this forbearance if he/she determines that the resulting practice(s) is unsafe or unsound or otherwise actually or potentially detrimental to New Flagship.

In August of 1989 Congress passed the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA", PL 101–73, August 9, 1989). This comprehensive legislation was the prescription by Congress for what was widely regarded as a savings and loan "crisis." The legislation established new capital requirements for the thrift industry, and reorganized the regulatory bodies responsible for the nation's savings and loan associations. FIRREA abolished the FHLBB and created the Office of Thrift Supervision ("OTS"), which took over many of the functions of the FHLBB.

The parties dispute what communications took place between OTS and Flagship from August, 1989 until December, 1989. The evidence establishes that in December, 1989 and January, 1990, Flagship received two "directives" from OTS. In these directives OTS instructed Flagship to meet the capital requirements of FIRREA, and informed Flagship that the forbearance agreement was no longer applicable when calculating compliance with the relevant regulations. OTS requested that Flagship obtain prior approval for certain types of transactions.

On January 17, 1990 plaintiffs filed a complaint for temporary restraining order, preliminary injunction, permanent injunction, and declaratory relief. The court held an initial hearing on plaintiffs' request for a temporary restraining order on January 19, 1990. At the conclusion of the hearing, the court ordered that the matter be set for

further hearing on January 26, 1990. The file was sealed pending further order of the court.

## SUBJECT MATTER JURISDICTION

■ This court has subject matter jurisdiction to render judgment upon plaintiffs' claims against the OTS and the FDIC as a result of statutory waivers of sovereign immunity. The court has jurisdiction to hear a claim against the FDIC pursuant to 12 U.S.C.A. § 1819(a) (Fourth). *Woodbridge Plaza v. Bank of Irvine*, 815 F.2d 538 (9th Cir.1987).

The court finds that it has subject matter jurisdiction over plaintiffs' claim against the OTS because of the alternative waiver of sovereign immunity as to the Director of OTS found in FIRREA: "... the Director [of OTS] shall be subject to suits (other than suits on claims for money damages) by any Federal savings association or director or officer thereof with respect to any matter under this section ... in the United States district court for the judicial district in which the savings association's home office is located, or in the United States District Court for the District of Columbia ..." 12 U.S.C.A. § 1464(d)(1)(A).

■ The FDIC correctly argues that generally, actions in contract, express or implied, against the United States are governed by the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491. *Marcus Garvey Square v. Winston Burnett Const.*, 595 F.2d 1126, 1132 (9th Cir.1979). However, where there is an alternative waiver of sovereign immunity and a specific grant of jurisdiction to the district court, the district court will have jurisdiction over the claim. *Munoz v. Small Business Administration*, 644 F.2d 1361, 1364 n. 3 (9th Cir. 1981). Flagship's action falls within the grant of jurisdiction at FIRREA 12 U.S.C.A. § 1464(d)(1)(A). This is the district in which Flagship's home office is located, and Flagship is only seeking injunctive relief.

■ The FDIC urges the court to construe this complaint as being essentially an action against the United States, and argues that exclusive jurisdiction of the case

is then in the Court of Claims. The court finds, as discussed above, that there has been an alternative waiver of sovereign immunity and a specific grant of jurisdiction to the district court in suits against the Director of OTS. *See Munoz*, and 12 U.S. C.A. § 1464(d)(1)(A). Further, the court cannot agree that by law the court must find that this is a suit against the sovereign.

"The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (citations omitted). As to the first consideration, there is no risk here of a judgment on the treasury, as plaintiffs have sought only injunctive relief. As to the second factor, a judgment in favor of plaintiffs in this case would interfere with the administration of justice. However, Congress specifically gave this court jurisdiction over suits seeking a remedy other than money damages. 12 U.S.C.A. § 1464(d)(1)(A).

## RIPENESS

■ Despite the existence of subject matter jurisdiction, the court will not entertain plaintiffs' claim because the controversy between the parties is not ripe for review. Courts will generally not apply their equitable powers to the review of administrative determinations until the controversy is "'ripe' for judicial resolution." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). This doctrine is to insure that there will not be "judicial interference until any administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* at 148, 149, 87 S.Ct. at 1515.

Upon an examination of the language and circumstances of the OTS and FDIC letters, the court finds that they do not represent a "formalized" determination by either agency. Both agencies informed Flagship that it could avoid formal action

by either agency by taking certain steps. In its correspondence OTS essentially directed Flagship to comply with FIRREA's regulatory capital requirements as established in FIRREA or face administrative action. OTS requested that Flagship not engage in a list of enumerated transactions, but stated that Flagship could seek review and leave from these restrictions. The FDIC described in specific terms in its letter what regulations Flagship may be violating, and what it could do to prevent the FDIC from taking regulatory action.

The type of formalized actions available to OTS in the event a thrift institution does not meet the FIRREA capital requirements are set out in detail at 12 U.S.C.A. § 1464(t)(6), 54 Fed.Reg. 49,655 (to be codified at 12 C.F.R. § 567.4) and 12 U.S.C.A. § 1818. The directive letters cannot be characterized as formal agency action in light of the formal actions enumerated in these and other code sections. *See Id.* If OTS or the FDIC did take one of these enumerated actions, then there would be an agency action ripe for review.

■ Following the reasoning of *Abbott*, absent any formalized agency action, any effects felt by Flagship are irrelevant to the court's decision. *Abbott*, 387 U.S. at 148, 87 S.Ct. at 1515. There does appear to have been significant effects upon Flagship as a result of the letters, but the court cannot find that letters from a regulatory agency are open to judicial review simply because the party receiving the letter reacts or experiences hardship as a result of reactions by others related to the party. Were this the case, the caution against judicial interference in *Abbott* would be meaningless.

■ Plaintiffs argue that the OTS issuance of Thrift Bulletin TB38–2 was agency action that should have been issued in compliance with Section 553 of the Administrative Procedure Act. The court finds that this bulletin is a general statement of policy within the exception to the notice and comment procedures of section 553 found at section 553(b)(A). See *Guardian Federal S & L Association v. Federal Sav-* *ings and Loan Insurance Corporation,* 589 F.2d 658, 666 (D.C.Cir.1978).

## INJUNCTIVE RELIEF

■ The Ninth Circuit has developed two alternative standards to guide this court in granting injunctive relief. Under the traditional standard, the considerations are: 1) the possibility of irreparable injury to the plaintiff; 2) a balance of hardships favoring the plaintiff; 3) the plaintiff's likelihood of success on the merits; and 4) the public interest. *American Motorcyclist Ass'n v. Watt,* 714 F.2d 962, 965 (9th Cir.1983). The second, alternative, standard entitles the plaintiff to relief where it demonstrates "either a combination of probable success and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in its favor." *Id* at 965. Under either standard the plaintiff must show irreparable harm.

Plaintiffs allege irreparable harm due to the business opportunities lost, the resignation of Board members and key personnel, the potential damage to the institution's reputation, and the potential damage to the investors' reputation. The court finds that all of the harms alleged by plaintiffs are compensable with damages. While plaintiffs argue that Judge Friendly's decision in *Semmes Motors, Inc. v. Ford Motor Company,* 429 F.2d 1197 (2d Cir.1970) is controlling, the court finds that case limited to its facts. In *Semmes,* a dealer sought to enjoin Ford Motor Company from cancelling his dealership. Judge Friendly held that the "right to continue a business in which William Semmes had engaged for twenty years and into which his son had recently entered is not measurable entirely in monetary damages." *Id.* at 1205. There is no such personal right at stake for Flagship's sophisticated and diversified investors. Accordingly, since the plaintiffs cannot show irreparable harm, the plaintiffs are not entitled to injunctive relief.

■ Further, the court finds that Flagship is not likely to succeed on the merits of its case. First, the court cannot agree with plaintiffs' contention that FIRREA directs OTS to honor the type of capital

forbearance granted to Flagship in November, 1988. Plaintiffs direct the court's attention to FIRREA §§ 401(f), (g), (h) (found at the note to 12 U.S.C.A. § 1437). These sections contain savings provisions which state that the "existing rights, duties and obligations" of the FHLBB and FSLIC are not to be affected by FIRREA, and that all "orders, resolutions, determinations and regulations" were to remain in effect "until modified, terminated, set aside, or superseded in accordance with applicable law by the Director of OTS."

The court cannot agree that these sections prohibit OTS from abrogating the forbearance agreement. First, the language at FIRREA §§ 401(f), (g) and (h) prevents any change in agency obligations *as a result* of the abolition of the FHLBB and the FSLIC. *See* note to 12 U.S.C.A. 1437. Even if the forbearance letter represents an obligation by the FHLBB or the FSLIC to Flagship, it is not the abolition of those agencies which precipitated the current controversy. The alleged obligation was abrogated because OTS acted pursuant to its mandate under FIRREA.

Second, the statute states that the capital requirements apply to any "savings association," with no exclusion for savings associations that have received capital forbearances. *See* 12 U.S.C.A. §§ 1464(s), (t). Congress did exempt certain types of forbearances from the capital requirements. *See* FIRREA § 301, found as a Savings Provision to 12 U.S.C.A. § 1467(a). Congress could have chosen to exempt the type of forbearance granted to Flagship, but it did not, and the court will not imply exemptions into the statute.

 Plaintiffs also direct the court to FIRREA § 501(b)(11)(B), *see* 12 U.S.C.A. § 1441a(b)(11)(B). That section orders the newly created Resolution Trust Corporation ("RTC") to review insolvent institution cases resolved by the FSLIC between January 1, 1988 and August 9, 1989, the date of enactment of FIRREA. *See* Section 501(b)(11)(B). The RTC is directed to evaluate the costs to the FSLIC of the forbearances granted to these now insolvent institutions.

The court finds that this section is not relevant to this controversy because Flagship is not one of the institutions to which this section applies. Consequently, the court finds that this section does not indicate any Congressional intent to grandfather a forbearance such as that granted to Flagship.

 Plaintiffs also argue that they have a cause of action in contract. The court agrees with defendants argument that the forbearance letter was not a contract but a statement by the FHLBB that it would not prosecute Flagship for failing to meet the statutory capital requirements in force in November of 1988. This characterization of the letter is supported by the language of the letter itself. The FSLIC agrees to "forbear ... from exercising its authority" to compel compliance with regulatory capital requirements. Moreover, the FHLBB specifically reserves a right to cancel the forbearance at any time if it should find that the forbearance "is unsafe or unsound or otherwise actually or potentially detrimental" to Flagship. If this was a contract, it was an illusory one, for one party had the right at any time to cancel its side of the bargain.

 Furthermore, the United States Supreme Court has held that when Congress reserves the power to amend legislation, contracts made pursuant to that legislation are subject to future legislative action. *See Bowen v. Agencies Opposed to Social Security Entrapment (POSSE)*, 477 U.S. 41, 52, 106 S.Ct. 2390, 2396, 91 L.Ed.2d 35 (1986). Plaintiffs point to nothing in the National Housing Act (which is the source of the FHLBB's general powers to grant such a forbearance) that would indicate any intention by Congress to waive its power to legislate in this arena. Even if there was a contract between the FHLBB and Flagship, this contract is subject to FIRREA under the *POSSE* doctrine. *See Id.*

 Lastly, plaintiffs seek injunctive relief for an alleged unconstitutional taking of property. Plaintiffs remedy is consequently limited to an action in the Claims Court subsequent to any unconstitutional

taking. "Equitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking." *Ruckelshaus v. Monsanto*, 467 U.S. 986, 1016, 104 S.Ct. 2862, 2880, 81 L.Ed.2d 815 (1983).

## SEALING OF THE FILE

At the beginning of this litigation the court ordered the file sealed. That seal is hereby lifted. The public interest in the regulation of savings associations is best served by access to this file. However, a court may order a file sealed if information would be disclosed which is confidential by regulation. *See Comptroller of the Currency v. T. Bertram Lance*, 632 F.Supp. 437, 443 (N.D.Ga.1986). The court will give the parties an opportunity to reach a stipulation as to which documents are to remain sealed. The parties may also stipulate that certain portions of the pleadings may be redacted to the extent that they reveal such confidential information.

## CONCLUSION

The court has subject matter jurisdiction over this claim for injunctive relief against the Director of the Office of Thrift Supervision and the Federal Deposit Insurance Corporation. However, given that the agency actions were not final decisions, the controversy is not ripe for review and the court lacks jurisdiction to hear the claim.

Furthermore, the plaintiff is not entitled to injunctive relief. There is no irreparable harm, and the plaintiff is not likely to succeed in showing that FIRREA prohibited the actions of the OTS or FDIC, or that there was a breach of contract. Accordingly, the motion for a temporary restraining order is denied. The sale on the file is lifted except for those documents which are to remain confidential by order of the court.

IT IS SO ORDERED.