FIRST FEDERAL LINCOLN
BANK, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 95–518C.

United States Court of Federal Claims.

April 28, 2004.

Edward L. Lublin, Blank Rome LLP, Washington, D.C., for plaintiff. Paul M. Honigberg, Lawrence S. Sher, and Katia I. Fano, Blank Rome LLP, of counsel.

Gary J. Dernelle, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom were Stuart E. Schiffer, Deputy Assistant Attorney General, David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director, for defendant. Colleen Hanrahan, Jeffery T. Infelise, and William G. Kanellis, Commercial Litigation Branch, of counsel.

## OPINION

MARGOLIS, Senior Judge.

*First Federal Lincoln Bank v. United States*, 58 Fed. Cl. 363 (2003) ("*First Federal II*"), resolved the issue whether the government and First Federal Lincoln Bank ("Lincoln" or "plaintiff") had entered into binding contracts with respect to Lincoln's mergers with three failing savings and loan associations or thrifts. *Id.* at 364. The Court found that a contract existed between Lincoln and the government with respect to Lincoln's merger with Great Plains Federal Savings and Loan Association of Falls City, Nebraska ("Great Plains"), *id.* at 369, but that no contracts existed with respect to Lincoln's other two mergers, *id.* at 370. Defendant now seeks reconsideration of the Court's ruling on the Great Plains transaction. Specifically, defendant contends that the standards set out in *Anderson v. United States*, 344 F.3d 1343 (Fed.Cir.2003) and *D & N Bank v. United States*, 331 F.3d 1374 (Fed.Cir.2003), clearly demonstrate that the FHLBB's approval of Lincoln's application to acquire Great Plains did not constitute the manifest assent necessary to form a contract. Def.'s Mot. for Reconsideration at 2. According to defendant, this is a clear error of law that must be reconsidered to avoid a manifest injustice. In opposing defendant's motion, plaintiff contends: (1) that defendant has failed to demonstrate that the Court's opinion contains a clear error of law or constitutes manifest injustice; (2) that the Federal Circuit's opinions in *Anderson* and *D & N Bank* do not represent any change in controlling law; and (3) that the Court properly applied controlling *Winstar* precedent in holding the government liable for breach of contract with regard to the Great Plains transaction. After careful consideration of both parties' briefs, the Court **DENIES** the motion.

## DISCUSSION

■ A motion for reconsideration, pursuant to R. Ct. Fed. Cl. 59(a)(1) ("RCFC"), must be based on a manifest error of law or mistake of fact and must show either: (1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice. *Bannum, Inc. v. United States*, 59 Fed.Cl. 241, 243–44 (2003) (internal citations omitted); *Bishop v. United States*, 26 Cl.Ct. 281, 286 (1992). Here, defendant's motion is based on an alleged error of law, which defendant contends must be revisited to prevent manifest injustice.

## I. The Federal Circuit's Decisions in D & N Bank v. United States and Anderson v. United States

In *D & N Bank v. United States*, 331 F.3d 1374, 1376 (Fed.Cir.2003), the Federal Circuit held that the plaintiff failed to prove the existence of a contract under which the plaintiff could (1) designate goodwill, arising from its acquisition of another thrift, as regulatory capital and (2) amortize that goodwill over a 40–year period. Specifically, the court found that the "documents and testimony of the parties" failed to show any mutual intent to contract. *Id.* at 1377. The court explained that, a contract may arise from "the confluence of multiple documents," *id.* at 1378, but "there needs to be something more than a cloud of evidence that could be consistent with a contract to prove a contract and enforceable contract rights." *Id.* at 1377. This "something more," according to the court, is a "clear indication of intent to contract and the other requirements for concluding that a contract was formed." *Id.* at 1378 (citing *Cal. Fed. Bank, FSB v. United States*, 245 F.3d 1342, 1347 (Fed.Cir.2001)).

D & N had offered several types of documents as evidence that a contract existed. *Id.* According to the court, this evidence was insufficient because none of these documents, read alone or in conjunction with one another, expressed the government's intent to contract or even mentioned goodwill or its accounting treatment. *Id.* The court found that the only document, which arguably indicated a promise, was the Bank Board Resolution. *Id.* According to the court, that document only showed the Board's approval of the merger. *Id.* The Resolution did not say anything about goodwill and, more importantly, there were no negotiations between D & N and the Bank Board that resulted in the Resolution. *Id.* at 1379. Under such circumstances, the court concluded that the Resolution amounted to "mere approval of the merger," and not an intent to contract. *Id.* at 1378.

In *Anderson v. United States*, 344 F.3d 1343, 1352 (Fed.Cir.2003), the Federal Circuit held that the plaintiff failed to show the existence of a contract to permit extended goodwill amortization. Specifically, the court found that, although plaintiff had shown the existence of an offer, it failed to show the existence of a reciprocal acceptance. *Id.* at 1355. The court explained that, the "something more" language used in *D & N Bank* required a " 'manifest assent to the same bargain proposed by the offer.' " *Id.* at 1356 (quoting Restatement (Second) of Contracts § 50 cmt. a (1981)). Considering all the evidence, the court held that the Bank Board did not manifest a contractual intent to agree to permit extended amortization of goodwill. *Id.* at 1358. The court found that the Bank Board Resolution lacked a statement of manifest assent to be bound because the "only provision discussing goodwill [was] nothing more than regulatory boilerplate." *Id.* at 1357. Similarly, the court found that the Forbearance Letter lacked a statement of manifest assent because neither of the forbearances granted related to the amortization of goodwill. *Id.* Finally, the court looked at the negotiations between the parties and concluded that the evidence conclusively established that the plaintiff "modified his offer by dropping his request for extended goodwill amortization." *Id.* at 1358.

## II. Do D & N Bank and Anderson Represent a Change in Controlling Law?

Defendant first contends that *D & N Bank* and *Anderson* established a more stringent standard than the standard this Court applied to the facts and circumstances of the Great Plains transaction. Plaintiff, on the other hand, claims that *D & N Bank* and *Anderson* did not enunciate new law, but rather applied the "well-settled principles of contract law" established by prior precedent. Pl.'s Opp. at 7. The Court agrees with plaintiff, and finds neither *D & N Bank* nor *Anderson* established an intervening change in the controlling law which renders the Court's decision a clear error of law.

### A. Standard for Determining Government Acceptance Under Prior *Winstar* Precedent

 Defendant essentially claims that for plaintiff to establish the "manifest assent" necessary under prior precedent, it must point to some affirmative statement of the government's intention to be bound in either the Bank Board's Resolution or a Forbearance Letter. Thus, according to defendant, regardless of the negotiations that resulted in FHLBB approval, if the documents do not expressly state that goodwill is to be amortized in a certain way, there is no contract. The Court believes that defendant misinterprets prior precedent. It is well settled that a court must apply ordinary principles of contract interpretation to determine whether a contract exists between a private party and the government. *United States v. Winstar Corp.*, 518 U.S. 839, 870–71, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996) (*"Winstar III"*). Under ordinary principles of contract construction, a court must "construe the contract in terms of the parties' intent, as revealed by language and *circumstance.*" *Id.* at 911, 116 S.Ct. 2432 (Breyer, J., concurring) (emphasis added).

 Based on controlling *Winstar* precedent, this Court finds that determining whether the "manifest assent" necessary to form a contract exists involves a two-step inquiry. First, a court should look to documents such as FHLBB resolutions, forbear-

**504**

ance letters, assistance agreements, and supervisory action agreements to see if they consist of only regulatory proclamations, or if they include additional language, which clearly manifests the government's intention to contract. *Anderson,* 344 F.3d at 1356–57. Second, if these documents do not contain this additional language, but merely contain provisions that are "regulatory boilerplate," a court should look to the circumstances surrounding the merger's approval to see if, in light of this evidence, the regulatory boilerplate clearly manifests the government's intention to contract. *Winstar III,* 518 at 863, 116 S.Ct. 2432.

■ Prior precedent establishes that, contrary to defendant's assertions, the fact that a FHLBB Resolution includes nothing more than regulatory boilerplate does not foreclose a finding that a contract exists if the "realities of the transaction" favor interpreting the approval's language as a contractual promise rather than a regulatory action. *See Home Federal Bank of Tennessee, F.S.B. v. United States,* 57 Fed.Cl. 676, 691–92 (2003). Case law establishes a two-step analysis that involves looking at the documents memorializing the alleged contract and then, looking at circumstantial evidence to "provide color to otherwise inconclusive manifestations." *Fifth Third Bank of Western Ohio v. United States,* 52 Fed.Cl. 264, 278 (2002).

## B. The Standard Applied in *D & N Bank* and *Anderson*

■ Defendant's next contention is that, even if the court set forth the correct standard, *D & N Bank* and *Anderson* made that standard more stringent. This Court disagrees. In *D & N Bank,* the court expressly stated that to show manifest assent by the government a plaintiff must show an "affirmative statement of the government's intention to be bound *either* in documents *or based upon witness testimony about the words and actions of the relevant* government officials." 331 F.3d at 1382 (emphasis added). In *D & N Bank,* the court initially looked at the Bank Board Resolution and found that it was insufficient because it lacked an affirmative statement of the government's intent to be bound. *Id.* at 1378–

79. The court's analysis, however, did not end there. The court next looked at the testimony of government officials, the statements and documents by government officials referring to the merger, and the context in which the merger took place to determine whether the government's approval amounted to an intent to contract as to the treatment of goodwill. *Id.* at 1379–80. Thus, the court did not hold, as defendant asserts, that government acceptance can only be determined by reference to FHLBB resolutions and forbearance letters. Rather, the court held that the facts surrounding the Bank Board Resolution in *D & N Bank* failed to show that the merger approval was anything more than regulatory approval. *Id.* at 1379 ("[T]here was no negotiation between D & N and the Bank Board that resulted in approval of the merger.").

In *Anderson* the court again applied this standard. The court first looked at the Resolution and the forbearance letter relating to the merger at issue and found that neither constituted "the necessary 'manifest assent,'" to form a contract. 344 F.3d at 1355. Looking first to the Resolution, the court found that the only provision that mentioned goodwill was Condition 8, which conditioned the merger's approval on the submission of accounting analyses of the supervisory goodwill resulting from the use of purchase method accounting. *Id.* The court explained that this provision was nothing more than "regulatory boilerplate, added by the Bank Board as a *regulator rather than as a contractor.*" *Id.* at 1357 (emphasis added). Looking next at the forbearance letter, the court concluded that it did not constitute manifest assent on the part of the government. *Id.*

Similar to the approach followed in *D & N Bank,* the court did not end its analysis; but rather, next inquired into the circumstances surrounding the transaction. *Id.* at 1358. Having determined that the language in the documents was merely regulatory boilerplate, the court still had to determine whether this language was added by the Bank Board acting as a "regulator or as a contractor." *Id.* at 1357. The court found that the "undisputed evidence ... confirm[ed] that the Bank Board did not manifest a contractu-

al intent to agree to permit extended amortization of goodwill." *Id.* at 1358. Based on the foregoing the Court finds that neither *D & N Bank* nor *Anderson* established a standard which forecloses a finding of government acceptance if there is no Bank Board Resolution, Forbearance Letter, or Assistance Agreement, which specifically states that the government is bound to allow the thrift to amortize goodwill over a specified period of time.

### III. Application of Controlling Winstar Precedent in the Great Plains Transaction

The next issue defendant's motion presents is whether this Court misapplied controlling *Winstar* precedent. Defendant contends that because the facts of *D & N Bank* and *Anderson* are so similar to the facts in the Great Plains transaction, the Court's decision in *First Federal II* constitutes a clear error of law. Defendant's claim is based on two contentions: first, that *D & N Bank* and *Anderson* cannot be distinguished from the Great Plains transaction and second, that the Court erred in relying on certain evidence presented at trial. In response, plaintiff claims that defendant mischaracterizes the evidence presented during the Lincoln trial in an effort to "force fit the facts of [the Great Plains transaction] into the fact pattern presented in *D & N Bank* and in *Anderson*." Pl.'s Opp. at 14. The Court agrees with plaintiff and finds that the evidence concerning the Great Plains transaction is clearly distinguishable from the evidence presented in both *D & N Bank* and *Anderson* and thus, the fact that this Court reached a different result does not establish a clear error of law or fact.

### A. The Great Plains Transaction is Legally Distinguishable from *D & N Bank* and *Anderson*

The evidence of negotiations surrounding the Great Plains transaction can be distinguished from those present in *D & N Bank* and in *Anderson*. The court, in *D & N Bank*, analyzed three different types of circumstantial evidence—testimony by government officials that D & N contracted with the government, statements and documents by government officials that referred to D & N's merger as "supervisory," and market condi-

tions at the time of the merger. 331 F.3d at 1379–80. The court found that none of this evidence showed the government's intent to contract. *Id.*

Unlike *D & N Bank* or *Anderson*, in the Great Plains transaction there were extensive negotiations that specifically addressed the issues of goodwill amortization and purchase accounting. The testimony at trial, along with the documents presented, showed that Lincoln's offer to merge was initially conditioned on permission to amortize loan discounts by the sum-of-the-year digits method over ten years and to amortize goodwill on a straight-line basis over 30 years. *First Fed. II*, 58 Fed.Cl. at 367. The FHLBB rejected these terms and presented Lincoln with one alternative regarding loan accretion and three alternatives regarding goodwill amortization. *Id.* Because Lincoln found the proposed modifications unacceptable it stated that it was going to withdraw its merger application. *Id.* After much discussion between Lincoln and FHLBB, Lincoln sent a letter to FHLBB indicating why the different alternatives were financially unappealing. *Id.* at 368. It stated that Lincoln was still interested in merger approval of the original accounting methods and mentioned the possibility of "further negotiations." *Id.* at 368. After much oral and written communication between Lincoln and the FHLBB, the FHLBB and Lincoln struck a bargain— FHLBB relented on some of the terms in its proposed modifications, and Lincoln accepted some of the terms in the proposed modifications. *Id.* at 369. All of the terms of the contract—the net worth forbearance, the loan discount accretion period and method, and the goodwill amortization period—were extensively negotiated, bargained for, and agreed upon by both parties. Thus, this case is unlike *D & N Bank*, where there were no negotiations leading to the merger's approval. Further, this case is unlike *Anderson* because in *Anderson* the negotiations led to a contract that did not include a term for extended goodwill amortization. 344 F.3d at 1358 ("The undisputed evidence thus indicates that, as a result of his discussion with the Bank Board staff, Paul modified his offer by dropping his request for extended good-

**506**

will amortization."). In the Great Plains transaction Lincoln never dropped its request for extended goodwill amortization, and the negotiations led to a contract that included a term for a 25–year goodwill amortization period.

In both *D & N Bank* and *Anderson,* the negotiations or circumstances leading up to approval of both mergers did not give the regulatory boilerplate language used in the resolutions a contractual meaning, but rather confirmed that the government was acting solely in its regulatory capacity. In the Great Plains transaction, however, the negotiations and circumstances leading up to approval of the merger gave that same regulatory boilerplate language a contractual meaning. Therefore, defendant's claim that the evidence of negotiations in this case cannot be differentiated from the negotiations in *Anderson* or the circumstances in *D & N Bank* is without merit.

**B. Proper Characterization of the Negotiations**

Defendant characterizes the evidence relied on by the Court as negotiations consisting of: (1) Lincoln requesting the ability to amortize any goodwill resulting from the acquisition of Great Plains over a period of 30 years; (2) the government's request that Lincoln conform its goodwill treatment to existing regulatory policy consistent with GAAP; and (3) Lincoln's acquiescence to the government's request. In reality, the evidence showed extensive negotiations between Lincoln and FHLBB that led to a modification of Lincoln's offer, rather than Lincoln's acquiescence in the government's rejection of an extended amortization period.

Defendant points to the fact that the three alternatives the government gave Lincoln all conformed with existing regulatory policy and were consistent with GAAP. Specifically, it argues that because the alternatives offered by FHLBB conformed with existing regulatory policy consistent with GAAP, the FHLBB was not acting as a contracting party, but rather as a regulator, simply approving the merger. While it might be true that the FHLBB alternatives presented to Lincoln conformed with existing regulatory policy consistent with GAAP, this Court fails to

see how this is relevant to determining whether a contract, under which Lincoln was guaranteed a certain amortization period regardless of a change in regulatory policy, existed. In the Glendale transaction in *Winstar II,* the Federal Circuit found that a contract existed, under which Glendale could amortize goodwill over a period not to exceed 40 years. *Winstar v. U.S.,* 64 F.3d 1531, 1540 (Fed.Cir.1995). The court found that Bank Board Memorandum R–31b, which set forth the Board's then-current regulatory policy, provided the specific contract terms regarding amortization of goodwill. *Id.* 1540–42. In so finding, the court expressly rejected the argument that the government now sets forth. *Id.* at 1542 ("We consider the government's argument that the Bank Board Resolution was merely a statement of 'then-current prosecutorial and regulatory policy' to be of little significance."). The court explained that the standard for determining whether a contract between the government and the thrift existed looks to whether terms regarding the amount of supervisory goodwill and its amortization periods are incorporated in a "negotiated arm's length contract." *Id.* If these terms are included in the contract, then both parties are bound by them. Therefore, according to the court, it is irrelevant that a regulatory policy could be changed in the future because "the contract [including the terms set forth in the regulatory policy] could not be changed except by mutual consent." *Id.*

In affirming the Federal Circuit's rulings in *Winstar II,* the Supreme Court agreed with this standard, noting that the question to be determined is whether an agreement allowing thrifts to use accounting methods consistent with existing regulatory policy was a mere statement of the "background rules," or was a "part of the 'agreements and understandings' between the parties," to which they were bound. *Winstar III,* 518 U.S. at 863, 116 S.Ct. 2432. Therefore, defendant's contention that no contract existed because the contract terms regarding goodwill amortization conformed with existing regulatory policy is without merit.

## C. Use of Forbearances to Show a Contract Existed Regarding Goodwill

Defendant argues that the Court incorrectly relied on the FHLBB's grant of two forbearances, both unrelated to goodwill amortization, to show that a contract existed under which plaintiff could amortize goodwill over a 25–year period. Defendant's contention both misinterprets the law of contracts and mischaracterizes the evidence relied on by the Court.

As the Supreme Court explained in *Winstar III,* supervisory goodwill was attractive for two reasons. 518 U.S. at 850, 116 S.Ct. 2432. First, the acquiring thrift could count it toward their capital reserve requirements. *Id.* Second, and more important for this action, the ability to amortize goodwill over a period of time longer than that used to discount or accrete loans resulted in a net paper profit over the initial years following the acquisition, and thus allowed the acquiring thrift to seem more profitable than it was. *Id.* at 850–53, 116 S.Ct. 2432. Because these two accounting principles are useful to a thrift only to the extent that there was a timing difference between goodwill amortization and loan discount accretion, the negotiations of each cannot be looked at separately.

The evidence shows that Lincoln bargained with FHLBB for the ability to use certain accounting methods—namely the ability to amortize goodwill over an extended period of time, the ability to accrete loan discounts in a certain manner, and the net worth forbearance. The government gave Lincoln alternatives regarding each of these issues. In exchange for better alternatives for the loan discounts and the net worth forbearance, Lincoln was willing to settle for a shorter amortization period. Put another way, in exchange for a 25–year amortization period, the government was willing to give Lincoln better treatment regarding its loan discounts and its net worth forbearance. Given that the principle incentive for utilizing these accounting principles was the timing difference, it makes sense that Lincoln would have negotiated for them together and also that Lincoln would have agreed to a shorter amortization period in exchange for a shorter loan accretion period. Thus, unlike the govern-

ment's characterization of the negotiations, this was a bargained-for-exchange that allowed the government to avoid "a possible supervisory problem." *First Federal II,* 58 Fed.Cl. at 368–69.

Contrary to defendant's argument, the Court finds that it correctly viewed the evidence it relied on in its original opinion and further, based on that evidence, it correctly held that goodwill amortization was an essential term of the contract, which the government accepted when it approved the merger, *First Federal II,* 58 Fed.Cl. at 369.

### *CONCLUSION*

Defendant fails to point to any manifest error of law or mistake of fact that renders the *First Federal II* decision, regarding the Great Plains transaction, clearly erroneous. While defendant disagrees with the findings of fact, the conclusions of law, and the application of the law to the facts in *First Federal II,* such disagreements are better dealt with through the appeals process than on a motion for reconsideration. Further, because this Court still agrees with its original conclusions, defendant's motion for reconsideration is **DENIED.**