**ANCHOR SAVINGS BANK, FSB, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 95–39 C.

United States Court of Federal Claims.

Nov. 10, 2004.

Reissued on Nov. 18, 2004 for publication [1].

---

1. No substantive changes have been made to the order filed on November 10, 2004, which is herewith reissued for publication with headnotes added and footnotes renumbered.

Edwin L. Fountain, Jones, Day, et al., Washington, DC, for plaintiff.

Tarek Sawi, Commercial Litigation Branch, Civil Division, United States Department of Justice, for defendant.

## ORDER DENYING DEFENDANT'S MO-TION FOR RECONSIDERATION

BLOCK, Judge.

Defendant has endured a host of criticisms during recent years for the manner in which it has defended the *Winstar* cases in this court. Its tactics have been regarded as a type of "scorched earth policy," as the government concedes no ground regarding the applicability of established law or the implications of factual distinctions from one case to another. This court has at times regarded defendant's approach with skepticism or even disdain. Regrettably, that trend continues with defendant's Motion for Reconsideration of liability issues in this case. One judge of this court long ago lamented that "the government persists in ignoring or misrepresenting the law while failing to distinguish the cases factually." *Cal. Fed. Bank v. United States*, 39 Fed.Cl. 753 (1997). As the instant motion makes clear, reform is slow to come by.

In an opinion filed April 30, 2002 and an order filed August 2, 2002 during the liability phase of this litigation, Judge Turner granted plaintiff's motion for summary judgment for breach of contract with respect to the Peachtree/Crisp and Sun transactions. *See* 52 Fed.Cl. 406 (2002); "Order Memorializing Hearing on Dispositive Motions Pertaining to Unresolved Assisted Transactions," No. 95–39C (Fed.Cl. Aug. 2, 2002). On November 7, 2003, defendant filed its Motion for Reconsid-

eration of the Court's Orders Concerning Liability With Respect to the Peachtree/Crisp and Sun Transactions. This motion invited the court to reconsider Judge Turner's prior rulings based on what defendant alleged to be new precedential decisions of the Court of Appeals for the Federal Circuit.

■ The court should consider motions for reconsideration with exceptional care and discretion. *See Fru–Con Const. Corp. v. United States*, 44 Fed.Cl. 298, 300 (1999). A party must demonstrate extraordinary circumstances that justify relief to advance its claim and overcome the court's natural skepticism regarding such motions. *See id.* These "extraordinary circumstances" may be present if the movant is able to show: "(1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice." *Id.* at 301; *see Bishop v. United States*, 26 Cl.Ct. 281, 286 (1992). If that is the case and the movant can demonstrate that these circumstances contributed to a "manifest error of law, or mistake of fact" in the court's prior ruling, only then may reconsideration be proper. *Bishop*, 26 Cl.Ct. at 286.

■ Here, defendant has raised the specter of supervening precedent in the Federal Circuit that defendant claims is inconsistent with the basis of Judge Turner's prior rulings in this case. Specifically, defendant points to two decisions, *Anderson v. United States*, 344 F.3d 1343 (Fed.Cir.2003), and *D & N Bank v. United States*, 331 F.3d 1374 (Fed.Cir.2003), that it argues "are dispositive here because they provide a standard which, when applied to the facts and circumstances of this case, clearly shows the Government did not manifestly assent to any explicit goodwill terms sought by Anchor" and, *a fortiori*, could not have entered into a contract with plaintiff regarding regulatory goodwill that was subsequently breached by FIRREA.

In his 2002 rulings,[2] Judge Turner reached a clear, well-supported conclusion that the

---

2. Although the Peachtree/Crisp transaction and

Sun transaction were addressed in separate or-

Peachtree/Crisp and Sun transactions both involved contracts for the long-term amortization of regulatory goodwill. The court determined that the parties' negotiations and agreements leading up to the transactions, culminating with the Supervisory Assistance Agreements ("SAA") and other contemporaneous resolutions and letters contemplated by the SAAs, evinced the government's clear intent to enter into contracts with plaintiff. Furthermore, the court determined that the government's intent specifically embraced plaintiff's plans to amortize regulatory goodwill over an extended period, consistent with then-prevailing generally accepted accounting principles ("GAAP"). *See, e.g., Anchor,* 52 Fed.Cl. at 409–11.

Ultimately, Judge Turner concluded that evidence of a contract regarding Anchor's long-term amortization of goodwill was found in "a series of interrelated documents," just as the Federal Circuit's similar conclusion in *Winstar Corp. v. United States,* 64 F.3d 1531 (Fed.Cir.1995), *aff'd and remanded sub nom.,* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996), "relied upon various contemporaneous documents implementing the ... merger." [3] *Id.* The documents involved in the Peachtree/Crisp and Sun transactions "substantially match[ed] those found in the Federal Circuit's ... analysis of the Glendale

transaction." *Id.* Both involved SAAs and contemporaneous FHLBB Resolutions approving the mergers. Both SAAs incorporated contemporaneous documents into the transaction, including "any resolutions or letters." *Id.* at 410. Contemporaneous forbearance letters specifically addressed accounting for the mergers in accordance with then-prevailing GAAP, provided that Anchor submit supporting opinions from its independent accountants. *Id.* at 411. Therefore, the court determined that "the facts and circumstances of the Peachtree/Crisp transaction lead to the finding of a contract between plaintiff and the government regarding the long-term accounting treatment of goodwill from the acquisition of those thrifts, as well as the subsequent breach of that contract by the enactment of FIRREA." *Id.* at 420.

In its Motion for Reconsideration, defendant offers two Federal Circuit decisions that it holds out as new binding precedent on this court for interpreting liability in *Winstar* cases, *D & N Bank* and *Anderson.* Essentially, defendant maintains that these two cases stand for the proposition that the FHLBB Resolutions and other documents, which the Court of Federal Claims looked to in finding provisions "conditioning approval of the merger on the submission of detailed

---

ders, for ease of reference this order makes specific references and citations only to the April 30, 2002 Opinion and Order, 52 Fed.Cl. 406. The April 30 opinion outlined the framework the court would use for evaluating Anchor's other transactions. The Sun transaction was addressed, in light of this framework, during oral argument that was later incorporated into the August 2, 2002 order by reference. *See* July 25, 2002 Tr. at 7–35. The specifics of the Sun transaction were substantially the same as the Peachtree/Crisp transaction and they are addressed collectively herein.

3. Moreover, the court noted that the confluence of documents in the Peachtree/Crisp and Sun transactions were nearly identical to those in the Glendale transaction that was considered in *Winstar Corp. v. United States,* 64 F.3d 1531 (Fed.Cir.1995), *aff'd and remanded sub nom.,* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996). The Glendale transaction involved an SAA in which the FSLIC approved the Glendale merger; the SAA also contained an integration clause detailing the documents that would control the interpretation of the parties' agreement. *Anchor,* 52 Fed.Cl. at 412 (citing *Statesman Sav. Holding Corp. v. United States,* 26 Cl.Ct. 904, 909

(1992)). According to both the Court of Federal Claims and the Federal Circuit, Glendale's integration clause incorporated a contemporaneous FHLBB Resolution that approved the merger, and this Resolution specifically contemplated long-term amortization of regulatory goodwill as an essential component of the agreement. *Id.* at 412–13 (citing *Winstar,* 64 F.3d at 1536–40); *see also United States v. Winstar Corp.,* 518 U.S. 839, 863–64, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996) ("[W]e have no doubt that the parties intended to settle regulatory treatment of these transactions as a condition of their agreement.... We accordingly have no reason to question the Court of Appeals' conclusion that the government had an express contractual obligation to permit Glendale to count the supervisory goodwill generated as a result of its merger ... as a capital asset for regulatory capital purposes.") (internal quotation omitted). Finally, Judge Turner noted that the Glendale transaction involved "extensive negotiations" and conditions on the use of regulatory goodwill, which the Federal Circuit considered as other evidence of a *bona fide* agreement. *Anchor,* 52 Fed.Cl. at 413.

accounting analyses of the supervisory goodwill," were merely "regulatory boilerplate" that could not rise to the level of an expression of contractual intent. Def.'s Mot. for Reconsideration at 3 (quoting *Anderson*, 344 F.3d at 1355). According to defendant, *D & N Bank* and *Anderson* belie the outcome reached by Judge Turner here because the Federal Circuit *rejected* the existence of a contract in both subsequent cases, in which the plaintiffs had relied on similar documents to make their case—including the FHLBB Resolutions approving the mergers and accounting opinions required by the FHLBB Resolutions. "As in *Anderson* and *D & N*, the approval documents regarding both the Peachtree/Crisp and Sun transactions make no mention of any specific goodwill terms. Rather, they simply discuss the use of the purchase method and the regulatory requirement that the thrift's accountants provide a letter verifying the propriety of using the purchase method in the circumstances and advising of the period of years over which any goodwill would be amortized. These documents, which formed the regulators' approval of the Peachtree/Crisp and Sun acquisitions 'did not contain the crucial governmental promise to permit extended amortization of goodwill.'" *Id.* at 13 (quoting *Anderson*, 344 F.3d at 1359).

Simply put, defendant's argument lacks merit. Neither *D & N Bank* nor *Anderson* represented a departure from established *Winstar* caselaw, properly followed by Judge Turner, which requires the court to evaluate *Winstar* liability on a case-by-case basis using general principles of contract formation to determine whether all of the evidence available evinces the intent of the government to enter into an agreement regarding goodwill amortization. In each of those cases, the courts evaluated the relevant facts specific to each transaction and concluded that evidence of a contractual agreement was lacking; the FHLBB Resolutions, which *did* reference amortization of goodwill, were considered in each case to be "nothing more than a regulatory requirement imposed by the Bank Board in its regulatory capacity; it was not an acceptance that could create contractual obligations." *Anderson*, 344 F.3d at 1356 (citing *D & N Bank*, 331 F.3d at 1378–

79). In each case, the court lamented that, to find evidence of a contract, "something more is necessary." *Id.*

By contrast, in the Peachtree/Crisp and Sun transactions this court reviewed a host of documents that seem to amply satisfy the Federal Circuit's "something more" reference. Unlike the transactions in *D & N Bank* and *Anderson*, the Peachtree/Crisp and Sun transactions were "assisted transactions" for which defendant specifically entered into supervisory assistance agreements, and these SAAs included integration clauses that explicitly incorporated contemporaneous documents as part of the agreements. Although defendant's Motion for Reconsideration wholly overlooks this critical distinction, the SAA and integration clauses were a focal point of Judge Turner's evaluation of the Peachtree/Crisp and Sun transactions:

> The circumstances of the Glendale merger, at least in terms of the various associated documents and their content, are nearly identical to those associated with Anchor's merger with Peachtree and Crisp. Both Glendale and Anchor received SAA's from the government. Both Glendale and Anchor received forbearance letters from the FSLIC. FHLBB Resolution letters authorized the mergers in both the Glendale and Anchor transactions.

> Furthermore, the relevant documents of both mergers failed to specifically mention amortization time periods, but rather looked to independent accountant opinions for guidance whether purchase accounting was appropriate, and whether amortization periods were reasonable. The Federal Circuit declared that the approval of purchase accounting and the determination of reasonable periods of amortization ... were *subsequently integrated into the contract and became definite, unalterable terms of the contract.*

*Anchor*, 52 Fed.Cl. at 414 (emphasis added).

Furthermore, the April 30, 2002 opinion specifically addressed other cases that defendant raised at that time involving circumstances substantially similar to *D & N Bank* and *Anderson*, but distinguished the Anchor

transactions from those cases. In *Flagship Fed. Sav. Bank v. Wall,* 748 F.Supp. 742 (S.D.Cal.1990), the district court determined that the government's forbearance letter regarding regulatory capital requirements, in which the government explicitly reserved the right to cancel the forbearance at the agency's discretion, did not give rise to a contract. "*Flagship Federal* [was] distinguishable from the Peachtree/Crisp transaction in that Anchor's forbearance letter did not include a government reservation to cancel the forbearance at its discretion, *and the Peachtree/Crisp transaction involved documentation in addition to a forbearance letter and related FHLBB resolutions.*" *Anchor,* 52 Fed.Cl. at 415 (emphasis added). In *Charter Fed. Sav. Bank v. Office of Thrift Supervision,* 976 F.2d 203 (4th Cir.1992), the Fourth Circuit concluded that a contract for long-term amortization had not been reached because the regulatory approvals present in that case had not used express contractual language and the transaction did not include documents that other courts had found significant to contract formation. By contrast, this court noted in *Anchor* that *"unlike the* Charter *transactions, the Peachtree/Crisp transaction did include an SAA." Id.* at 416 (emphasis added).

Finally, the April 30, 2002 opinion ably demonstrated this court's ability to distinguish between transactions like Peachtree/Crisp and Sun in which (like Glendale) the confluence of documents and negotiations were adequate evidence of a contractual relationship, and transactions like those in *D & N Bank* and *Anderson* in which the documents indicated that the government was acting merely as an industry regulator. In rejecting plaintiff's construction of the Standard transaction as one involving contractual assurances, the court noted that this transaction lacked both a Supervisory Assistance Agreement and a forbearance letter. *Id.* at 420. The court distinguished the Standard transaction from others cited by plaintiff, including the Dixie and Western Heritage transactions considered in *Cal. Fed. Bank v. United States,* 39 Fed.Cl. 753 (1997), because those other transactions involved SAAs, which the court noted "strongly suggest[s] mutual intent to contract." *Id.* at 419. In-

stead, the court found "nothing in the documentary facts and circumstances of the unassisted Standard transaction which would make the government's involvement in that merger anything more than regulatory oversight in a heavily regulated industry." *Id.* at 420. If nothing else, this distinction that the court seized upon in the Standard transaction makes it clear that the principles defendant holds out as "new precedent" from *D & N Bank* and *Anderson* were really nothing more than an application of existing law to the specific facts of each of those cases.

This same conclusion was reached in *First Fed. Lincoln Bank v. United States,* 60 Fed. Cl. 501 (2004), in which Judge Margolis determined that "neither *D & N Bank* nor *Anderson* established an intervening change in the controlling law." *Lincoln Bank,* 60 Fed.Cl. at 503. Responding to a Motion to Reconsider substantially similar to the one defendant raises here, the court relied on prior precedent that requires the court to look to the "realities of the transaction" to give meaning to the FHLBB's approval language, which might otherwise be regarded as mere regulatory action. *Id.* at 504. Accordingly,

> In both *D & N Bank* and *Anderson,* the negotiations or circumstances leading up to approval of both mergers did not give the regulatory boilerplate language used in the resolutions a contractual meaning, but rather confirmed that the government was acting solely in its regulatory capacity. In the [Lincoln Bank] transaction, however, the negotiations and circumstances leading up to approval of the merger gave that same regulatory boilerplate language a contractual meaning.

*Id.* at 506. Similarly, in *Anchor,* the Supervisory Assistance Agreements and integration clauses—not present in either *D & N Bank* or *Anderson*—serve to elevate otherwise regulatory approvals to the dignity of negotiated, contractual undertakings consistent with prevailing *Winstar* precedent.

Since this court concludes that neither *D & N Bank* nor *Anderson* present the court with superceding precedent, and because the court's 2002 decisions with respect to the

Peachtree/Crisp and Sun transactions are the product of the sound application of *Winstar* precedent to the unique facts and circumstances of each transaction, defendant's Motion for Reconsideration is hereby **DENIED**.

In conclusion, as this case heads to trial after nine years of litigation, perhaps this Order and its companion denying plaintiff's motion for reconsideration will serve as a final admonishment to both parties to refrain from the antagonistic behavior that has dogged this case and others like it for so long. It is the court's hope that the trial will benefit from a professional effort from both parties, enabling the court to resolve the dispute pursuant to the letter of the law.