SCOTT TIMBER COMPANY, Plaintiff,

v.

The UNITED STATES, Defendant.

Nos. 94–784C, 96–204C.

United States Court of Federal Claims.

Filed April 14, 2005.

Reissued May 24, 2005.

Alan I. Saltman, Saltman & Stevens, Washington, DC, for Plaintiff.

David Allen Harrington, James Calvin Caine, John Sinclair Groat, U.S. Department of Justice, Washington, DC, for Defendant.

### *OPINION AND ORDER*

GEORGE W. MILLER, Judge.

On February 18, 2005, defendant filed a Motion for Reconsideration. Defendant sought reconsideration of the Court's decision in *Scott Timber Co. v. United States,* 64 Fed.Cl. 130 (2005) ("*Scott V*"), denying in part defendant's motion for summary judgment as to damages in Case No. 94–784C and defendant's cross-motion for summary judgment as to damages in Case No. 96–204C. Defendant sought reconsideration of the Court's holding that the doctrine of constructive termination did not apply to the timber sale contracts at issue in these consolidated cases. Pursuant to the Court's order of March 3, 2005, plaintiff filed an opposition on March 18, 2005. For the reasons set forth below, defendant's motion for reconsideration is DENIED.

Motions for reconsideration are governed by Rule 59 of the Rules of the Court of Federal Claims ("RCFC"), and are granted at the sole discretion of the court—not as a matter of right. *See Yuba Natural Resources, Inc. v. United States,* 904 F.2d 1577, 1583 (Fed.Cir.1990); *Fru–Con Constr. Corp. v. United States,* 44 Fed.Cl. 298, 300 (1999), *aff'd,* 250 F.3d 762 (Fed.Cir.2000). A motion for reconsideration pursuant to RCFC 59 " 'is not intended to give an unhappy litigant an additional chance to sway the court.' " *Bishop v. United States,* 26 Cl.Ct. 281, 286 (1992) (quoting *Circle K Corp. v. United States,* 23 Cl.Ct. 659, 664–65 (1991)).

On a motion for reconsideration, "[a] party must demonstrate extraordinary circumstances that justify relief to advance its claim and overcome the court's natural skepticism regarding such motions. *Anchor Sav. Bank, FSB v. United States,* 63 Fed.Cl. 199, 200 (2004) (citing *Fru–Con Constr. Corp.,* 44 Fed.Cl. at 300). These 'extraordinary circumstances' may be present if the movant is able to show: '(1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now avail-able; or (3) that the motion is necessary to prevent manifest injustice.' " *Id.* (quoting *Fru–Con Constr. Corp.,* 44 Fed.Cl. at 301); *see Bishop,* 26 Cl.Ct. at 286. "If that is the case and the movant can demonstrate that these circumstances contributed to a 'manifest error of law, or mistake of fact' in the court's prior ruling, only then may reconsideration be proper." *Id.* (quoting *Bishop,* 26 Cl.Ct. at 286).

The issue of constructive termination was fully argued in the parties' briefs and during oral argument. *See* Def. Mot. for Summ. J., Case No. 94–784C, at 32–39; Pl. Opp. at 29–38; Def. Reply at 14–17; Pl. Surreply at 1–6; Transcript of Proceedings, *Scott Timber Inc. v. United States,* (Fed.Cl. July 15, 2004) at 8–11, 29–38, 40, 46, 58, 60–68, 89–94; Def. Cross–Mot. for Summ. J., Case No. 96–204C, at 7–8; Pl. Opp. at 25–38; Def. Reply at 9–17; Pl. Surreply at 1–9; Def. Sur–Surreply at 1–4. Defendant, however, argues that the Court made a manifest error of law in its opinion and order of February 8, 2005:

> The Court's statement that constructive termination apples [sic] 'when the Government attempts to terminate a contract, but fails to do so for a legally sufficient reason' fails to recognizes [sic] that the controlling case law establishes that the doctrine of constructive termination applies regardless of whether the Government has attempted to terminate contracts.

Def. Mot. for Reconsideration at 2.

Defendant argues that the Supreme Court in *College Point Boat Corp. v. United States,* 267 U.S. 12, 45 S.Ct. 199, 69 L.Ed. 490 (1925), approved the constructive termination of a contract "in the absence of any attempt by the Government to terminate the contract unilaterally prior to the assertion of the doctrine of constructive termination." Def. Mot. for Reconsideration at 3. *College Point* does not support defendant's argument. The Supreme Court recounted the facts of that case as follows:

> On October 25, 1918, the College Point Boat Corporation agreed to manufacture for the Navy Department 2,000 collision mats. The United States agreed to pay therefor $641,200, and to supply the required canvas. On November 11, 1918, the

Armistice was signed. Soon after, the Navy Department informed the Corporation that the mats would probably not be needed, suggested that it stop operations, *and asked it to submit a proposition for cancellation of the contract.* This notification and request were received before the process of manufacture had been begun; but the Corporation had expended large sums in necessary preparations. Negotiations for settlement followed. They extended over nearly eight months and proved inconclusive. Without prejudice to the rights of either party, the United States made a partial settlement by taking over at cost raw materials which the Corporation had purchased or contracted for. *College Point,* 267 U.S. at 13–14, 45 S.Ct. 199 (emphasis added). The Navy in *College Point* clearly attempted to cancel the contract. It suggested that the contractor stop its operations and, thereafter, "the parties negotiated, seeking to find a basis on which they could agree to cancel and liquidate the obligation of the Government." *Id.* The Court held that "[a]s [the Navy's] efforts to procure consent to cancel proved futile, stopping the work was an anticipatory breach." *Id.* The Government failed to properly terminate the contract in *College Point,* but it is clear that the Government *attempted* to terminate the contract. As articulated by the Court of Claims in *John Reiner & Co. v. United States,* 163 Ct.Cl. 381, 325 F.2d 438 (1963), *cert. denied,* 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964), in *College Point,* the "defendant purported to cancel a Navy contract in mid-stream, without benefit of any power of termination reserved in the agreement and without knowledge that the Navy had such authority under a World War I statute." *Id.* at 443.

This Court noted in its Opinion and Order of February 8, 2005, that the instant cases are distinguishable from *College Point.* First, unlike the Department of the Navy in *College Point,* the Forest Service was aware that it had a right to cancel the timber sale contracts pursuant to Clause C8.2. *Scott,* 64 Fed.Cl. 130, 132, 2005 U.S. Claims LEXIS 35 *38. Second, unlike the Navy in *College Point,* the Forest Service made no attempt to cancel the timber sale contracts. The Forest

Service simply continued its suspension of the contracts.

Defendant also cites for support three cases in which the Court of Claims applied the doctrine of constructive termination to limit breach damages: *Nesbitt v. United States,* 170 Ct.Cl. 666, 345 F.2d 583 (1965); *Inland Container, Inc. v. United States,* 206 Ct.Cl. 478, 512 F.2d 1073 (1975); and *Kalvar Corp., Inc. v. United States,* 211 Ct.Cl. 192, 543 F.2d 1298 (1976).

Defendant's citation to *Nesbitt, Inland Container,* and *Kalvar* for the first time in its motion for reconsideration does not constitute a proper basis for reconsideration. Defendant led the Court to believe, after it had filed five briefs in support of its motions for summary judgment and two notices of supplemental authorities, that defendant had made all of its arguments on the issue of constructive termination. *See Bishop,* 26 Cl. Ct. at 286 ("The litigation process rests on the assumption that both parties present their case once, to their best advantage."). Though it is well established that a party, on a motion for reconsideration, may cite new cases that represent an "intervening change in the controlling law," *Anchor Sav. Bank,* 63 Fed.Cl. at 200, neither *Nesbitt,* decided in 1965, *Inland Container,* decided in 1975, nor *Kalvar,* decided in 1976, constitute such changes in the law.

▇ In any event, *Nesbitt, Inland Container,* and *Kalvar* are distinguishable from these cases. The Government in those cases did not sit on its rights. It did not consider and reject terminating the contracts for convenience, only to invoke its right under the clause after it had been held to have been in breach. Also, since those cases were decided, the United States Court of Appeals for the Federal Circuit and two boards of contract appeal have refused to retroactively apply terminations for convenience in cases where the Government failed to attempt to terminate during the course of performance. *Maxima v. United States,* 847 F.2d 1549 (Fed.Cir.1988); *Ace–Federal Reporters, Inc. v. Barram,* 226 F.3d 1329 (Fed.Cir.2000); *T & M Distributors, Inc.,* ASBCA No. 51279, 01–2 B.C.A. (CCH) ¶ 31,442; *Poston Log-*

*ging,* AGBCA No. 97–168–1, 99–1 B.C.A. (CCH) ¶ 30,188.

In the latter case, the Department of Agriculture Board of Contract Appeals refused to retroactively apply the termination clause in a timber sale contract similar to the contracts at issue in the instant cases. In that case, the Board stated: "What the [Forest Service] has attempted to do here with the environmental termination clause is to reach back in time to exercise a right of cancellation which it had available at one time (while the contract was still in effect), but which it never acted upon. The right to terminate under the environmental clause does not go on indefinitely.... In this case, unlike other cases applying an alternate basis to justify a termination, no termination or cancellation action has ever been exercised." *Id.*

In addition, the Board stated:

Generally the cases allowing post hoc application of the termination for convenience clause have arisen in the following contexts: (1) where a cancellation or termination of the contract had been exercised but done for the wrong reason, even though another proper basis existed (which was the case in *Reservation Ranch*), *G.C. Casebolt Co. v. United States,* 421 F.2d 710, 712, 190 Ct.Cl. 783 (1970); (2) where the cancellation or termination was carried out but was either misnamed or procedurally flawed, *see, John Reiner & Co. v. United States,* 325 F.2d 438, 163 Ct.Cl. 381 (1963), *cert. denied,* 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964); and (3) finally, as was the case in *College Point Boat v. United States,* 267 U.S. 12, 45 S.Ct. 199, 69 L.Ed. 490 (1925), where a specific statute defined limitations on Government liability so that there was no requirement for further Government action.

*Id.* The Board's analysis of the doctrine of constructive termination in *Poston Logging* supports the Court's conclusion that the Government may not rely on that doctrine in order to limit damages in these cases.

The Forest Service was long aware of its right to terminate Scott's timber sale contracts, but chose not to invoke that right; it chose to suspend the contracts instead. The Forest Service waited to invoke the termination clause until after the Federal Circuit held that its suspension of the non-C6.01 contracts was a breach. The Forest Service never attempted to terminate the contracts during the course of performance.

In light of the foregoing, the Court concludes that defendant has made no showing of extraordinary circumstances, and has not demonstrated any manifest error of law or mistake of fact in the Court's prior ruling that the holding in *College Point* and the doctrine of constructive termination are inapplicable to the facts of these cases. Defendant's Motion for Reconsideration is therefore DENIED.

The Court ORDERS that the parties shall file a joint status report by **Thursday, May 5, 2005.** The parties shall state, in light of the Court's Opinion and Order of February 8, 2005, to what damages, if any, plaintiff may still be entitled for breach of the non-C6.01 contracts. The parties should assume, for purposes of their report, that plaintiff could have harvested the timber sales without violating section 9 of the ESA.

The parties shall also state to what damages, if any, plaintiff might be entitled if the suspensions of the C6.01 contracts were held to have been unreasonable in duration. Again, the parties should assume, for purposes of their report, that plaintiff could have harvested the timber sales without violating section 9 of the ESA.

The parties shall also propose a schedule of further proceedings in these consolidated cases in order to address the remaining issues to be resolved.

IT IS SO ORDERED.